John L. BISHOP
v.
The UNITED STATES.
No. 598-53.

United States Court of Claims.
Nov. 30, 1954.

Robert L. Lansden, Cairo, Ill. (John F. Donelan, Washington, D. C., and David V. Lansden, Cairo, Ill., on the briefs), for plaintiffs.

Thomas L. McKevitt, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

In the first count of their petition plaintiffs sue for the alleged taking of their hunting facilities on certain lands in Alexander County, Illinois, as the result of Proclamation No. 2748, executed on October 1, 1947, which denied permission to hunt wild geese on these lands at any time.

In the second count they sue for the destruction of their crops on these lands by the geese, which, they say, was the natural result of the Proclamation and amounted to a taking by the defendant.

By the Migratory Bird Treaty of 1916, 39 Stat. 1702, the United States and Great Britain agreed to take necessary measures for the protection of migratory birds, which includes wild geese. Pursuant thereto Congress enacted the Act of July 3, 1918, 40 Stat. 755. In 1936 the United States and Mexico entered into a similar treaty, 50 Stat. 1311. Subsequently, the Act of July 3, 1918, supra, was amended by the Act of June 20, 1936, 49 Stat. 1555. By section 3 of the latter Act, which amended section 2 of the Act of July 3, 1918, it was provided:

"Unless and except as permitted by regulations made as hereinafter provided, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, [or] kill, * * * any migratory bird, or any part, nest, or egg of any such birds, included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702) and the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936.

"Subject to the provisions and in order to carry out the purposes of the conventions, the Secretary of the Agriculture is authorized and directed, from time to time, having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the conventions to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same in accordance with such determinations, which regulations shall become effective when approved by the President."

Pursuant to the authority of that Act, Proclamation No. 2739 was issued in 1947, by the terms of which the hunting of wild geese was permitted in the State of Illinois only from November 4 to December 3 of each year. Later, on October 1, 1947, Proclamation No. 2748, 61 Stat. 1089, was issued, which denied permission for the hunting of wild geese at any time within an area in Alexander County, Illinois, surrounding Horseshoe Lake Preserve, a bird sanctuary established by the State of Illinois.

Plaintiffs' rights, if any, grow out of the issuance of this latter proclamation.

There is no question that the proclamation was authorized by the Act of 1936. See Lansden v. Hart, 7 Cir., 168 F.2d 409, certiorari denied 335 U.S. 858, 69 S.Ct. 132, 93 L.Ed. 405, Id., 7 Cir., 180 F.2d 679, certiorari denied 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 606. Nor can there be any question that the Act of 1936 was constitutional. So far as we are here concerned, the Act of 1936 made no change in the Act of July 3, 1918, and the

latter Act was held constitutional by the Supreme Court in State of Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641.

Under the Act of 1936 it was provided that "it shall be unlawful at any time * * * to pursue, hunt, take, capture [or] kill * * * any migratory bird * * * included in the terms of the conventions between" the United States, Great Britain, and Mexico, "for the protection of migratory birds"—"unless and except as permitted by regulations made as hereinafter provided."

It was thus unlawful to hunt and kill a migratory bird at any time unless permitted to do so by regulations. The regulations permitted this in all of Illinois between November 4 and December 3 of each year, except in the area around the bird sanctuary known as Horseshoe Lake Preserve, in which area it was not permitted at any time.

This would seem to dispose of the first count of plaintiffs' petition. See Bailey v. Holland, 4 Cir., 126 F.2d 317; Lansden v. Hart, supra.

■ Plaintiffs' allegation in their petition that the right to hunt wild geese is a property right cannot be taken seriously in view of the Supreme Court's opinion in Geer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793, and this court's opinion in Aleut Community of St. Paul Island v. United States, 117 F. Supp. 427, 127 Ct.Cl. 328, and the opinion of the Court of Appeals in Lansden v. Hart, supra. No citizen has a right to hunt wild game except as permitted by the State.

In their second count plaintiffs say that as a result of Proclamation No. 2748 there was a congregation of large flocks of geese on or adjacent to their lands and that these geese destroyed their crops, and that this constituted a taking of them by the United States.

When the Proclamation was issued, some of the present plaintiffs filed a bill in the District Court seeking to enjoin its enforcement. The District Court denied the prayer for an injunction and this action was affirmed by the Court of Appeals. Lansden v. Hart, supra. The Court held that the Proclamation was valid and that no property right of the plaintiffs had been invaded, saying, 168 F.2d at page 412:

"No property rights of plaintiffs are involved in these proceedings inasmuch as no person has any property right in live migratory birds and the withdrawal of the privilege of hunting such birds by Federal and State Governments does not deprive anyone of a property right because no such right exists. Permission to hunt, given from time to time by the Federal and State regulations, is not a grant of property, but merely the grant of a privilege. Magner v. People, 97 Ill. 320; American Express Co. v. People, 133 Ill. 649, 24 N.E. 758, 9 L.R.A. 138; Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793."

The case again came before the Court of Appeals on appeal from an order of the District Court dismissing the bill. In the opinion of the Court of Appeals affirming the action of the District Court, reported in 180 F.2d 679, at pages 683, 684, it was said:

" * * * In the United States, migratory wild fowl can be hunted only as permitted by regulations issued pursuant to the Migratory Bird Treaty Act, which act implements the conventions between the United States and Great Britain and the United States and the United Mexican States. As the act itself is constitutional and as the regulations for the 1947 season issued thereunder (Proclamation 2748) are in all respects legal and valid, it follows that the plaintiffs cannot possibly state a claim under any theory of law upon which relief can be granted.

"The fact that plaintiffs have devoted real estate to, and developed other valuable facilities for, the hunting of migratory wild fowl has no bearing upon the point now under discussion. Under Secs. 703 and

704 of the Migratory Bird Treaty Act, no hunting of migratory wild fowl whatsoever is legal except as permitted under the regulations to be issued pursuant to said act. The larger purpose of saving geese from slaughter in the very limited area where they concentrate each year in such great numbers should prevail over the fact that the plaintiffs might enjoy profits if such hunting were permitted. At least regulations to that end are reasonable, rather than arbitrary."

Later, some of the plaintiffs brought an action for the damage to their crops under the Tort Claims Act. This suit was dismissed by the District Court and its action was affirmed by the Court of Appeals. Sickman v. United States, 7 Cir., 184 F.2d 616, certiorari denied 341 U.S. 939, 71 S.Ct. 999, 95 L.Ed. 685.

■ Now plaintiffs say that by the issuance of the Proclamation defendant took their crops and is liable therefor under the Fifth Amendment.

Defendant is not liable under this theory either. The mere fact that plaintiffs' property was damaged as a result of the issuance of this proclamation is not sufficient to show a taking. Many governmental actions often affect a person's business or property either favorably or adversely. For example, when the prohibition amendment was adopted distilleries were put out of business, but it was held in Hamilton v. Kentucky Distilleries, 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194, that the Government was not liable. When rent controls were put into effect, property owners' income was seriously affected, but it was held in Bowles v. Willingham, 321 U.S. 503, 64 S. Ct. 641, 88 L.Ed. 892, that the Government was not liable. Many other instances readily come to mind. See e. g., St. Regis Paper Co. v. United States, 110 Ct.Cl. 271, 76 F.Supp. 831; Ora Fina Consolidated Mines v. United States, 92 F.Supp. 1016, 118 Ct.Cl. 18, certiorari denied 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1371.

Defendant has not invaded plaintiffs' property, it has asserted no proprietary right in it. The gist of the whole matter is that Congress has passed an Act, valid under the Constitution, which prohibited the hunting of wild geese except as permitted by the Secretary of the Interior, and the Secretary of the Interior has refused to give the required permission in the area in question. For this, of course, the Government is not liable as for a taking.

It is really supererogation to discuss the matter further, but the opinion of the Court of Appeals of New York in Barrett v. State, 220 N.Y. 423, 116 N.E. 99, 100, L.R.A.1918C, 400, so well sums the matter up that we cannot refrain from concluding with the following quotation from the opinion in that case:

"As to the first, the general right of the government to protect wild animals is too well established to be now called in question. Their ownership is in the state in its sovereign capacity, for the benefit of all the people. Their preservation is a matter of public interest. They are a species of natural wealth which without special protection would be destroyed. Everywhere and at all times governments have assumed the right to prescribe how and when they may be taken or killed. As early as 1705 New York passed such an act as to deer. Colonial Laws, vol. 1, p. 585. A series of statutes has followed protecting more or less completely game, birds and fish.

"'The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds. * * * The measures best adapted to this end are for the legislature to determine, and courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body.' Phelps v. Racey, 60 N.Y. 10, 14.

"Wherever protection is accorded, harm may be done to the individual.

Deer or moose may browse on his crops; mink or skunks kill his chickens; robins eat his cherries. In certain cases the Legislature may be mistaken in its belief that more good than harm is occasioned. But this is clearly a matter which is confided to its discretion. It exercises a governmental function for the benefit of the public at large, and no one can complain of the incidental injuries that may result."

Defendant's motion to dismiss is granted, and plaintiffs' petition is dismissed. It necessarily follows that plaintiffs' motion to strike is overruled.

It is so ordered.

LARAMORE and LITTLETON, Judges, concur.

JONES, Chief Judge, took no part in the consideration or decision of this case.

MADDEN, Judge (dissenting in part).

I do not believe that the traditional right of the State to regulate or prohibit the hunting of wild game or fowl is so broad that a privately owned farm can, in effect, be converted into a game preserve without compensating the owner for the loss of the use of his farm.

Whether or not a "taking," in the constitutional sense, has occurred is often a question of degree. The occasional flight of planes, or overflowing of a stream, does not impose so serious a burden upon land as to be regarded as the taking of a servitude in the land. Nor does the annoyance and damage caused by animals or wild fowl, in ordinary circumstances. But if the circumstances are so extraordinary, as they are alleged to be in this case, that the accomplishment of the public purpose of protecting the wild fowl results in the destruction of a private owner's use of his land, I think the public treasury must compensate the owner. The Fifth Amendment deals with realities, and the alleged deprivation here is as real as if the land had been covered with water or enclosed by a fence.