496 P.2d 958

**BOISE CASCADE CORPORATION,**
**Plaintiff-Appellant,**

v.

**DEPARTMENT OF EMPLOYMENT,**
**Defendant-Respondent.**

**No. 10936.**

Supreme Court of Idaho.

May 12, 1972.

Cumer L. Green, Eberle, Berlin, Kading, Turnbow & Gillespie, Ctd., Boise, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., R. LaVar Marsh, Asst. Atty. Gen., Boise, for defendant-respondent.

DONALDSON, Justice.

The appellant Boise Cascade Corporation instituted this action to protest the contribution rate assigned to it by the respondent Department of Employment. This appeal involves the construction and constitutionality of I.C. § 72–1351(a) (6), a portion of the Idaho Employment Security Law, which reads as follows:

"If the payroll amount or the experience factor or both such payroll amount and experience factor of any eligible or deficit employer listed on the schedules is changed, such employer shall be placed in that position on *the schedules* which he would have occupied had his payroll amount and/or experience factor as changed been used in determining his position in the first instance, but such change shall not affect the position or rate classification of any other employer listed on the schedules and shall not affect the rate determination for previous years." Emphasis supplied.

As used in the above subsection:

*"payroll amount"* means the amount of an employer's taxable payroll for the year ending on the tax computation date (§ 72–1351(a) (2));

*"experience factor"* means the ratio of (1) excess of tax contributions made by an employer over benefits paid on his account to (2) his average annual taxable

payroll for the four years immediately preceding the computation date—in other words, "experience factor" is the percentage derived from the following fraction:

CONTRIBUTIONS minus BENEFITS
AVERAGE ANNUAL PAYROLL (4 years)

(or contributions minus benefits, divided by average annual payroll; § 72–1351(a)(1)(i)).

The meaning of *"the schedules"* (appearing where emphasized in the subsection above) is at issue in this action.

Section 72–1351 sets forth the procedure to be used in computing contribution rates. The first step is the computation of an experience factor for each employer. The second step is the preparation of a *schedule* listing all employers in inverse numerical order (i. e., the highest first) of their experience factors. Also listed on the schedule is the amount of each employer's taxable payroll for the previous fiscal year and the cumulative total of all payrolls listed up to that point on the schedule. The third step is the segregation of the *cumulative payroll amounts* into groups whose limits are specifically set out in the statute. Those employers whose payrolls fall within the top 10% of the total cumulative payroll pay the lowest tax rate; and rates rise with each succeeding 15% of total cumulative payroll—in other words, tax brackets change at 10%, 25%, 40%, 55%, 70%, and 85% of total cumulative payroll.

After completion of this procedure for 1970, Boise Cascade's position on the relevant schedule was such that its payroll amount straddled the dividing line between two cumulative payroll groups; part of its payroll fell above the 55% line of demarcation, while the rest fell below this line. More of Boise Cascade's payroll fell into the 55–70% bracket than fell into the 40–55% bracket. Section 72–1351(a)(4)(ii) provides that in such a situation, the employer shall be assigned the tax rate designated for the class in which the greater part of his payroll falls. Therefore,

Boise Cascade was assigned a tax rate of 1.7%, the 1970 rate for those whose payrolls were within 55–70% of total cumulative payroll for all employers. Boise Cascade does not challenge the procedure used in making this initial determination.

Based upon the information obtained by following the above procedure, the Department of Employment compiled a tax *table* for the year 1970, a copy of which was sent to all eligible employers. There is no statutory requirement that the Department of Employment compile and distribute such a tax *table,* which is in effect a summary of the information contained in the *schedule* discussed above, the preparation of which is mandated by I.C. § 72–1351.

The issue in this case arose when certain benefits erroneously charged to Boise Cascade's account were deleted, with the result that its originally computed experience factor of 14.0753 was improved to 14.1258. Boise Cascade contends that the following tax *table* must be used to determine what tax rate should be assigned to it in light of the discovery of the error in the amount of benefits charged to it:

| Rate Class | 1970 Experience Factors | | Tax Rate |
|---|---|---|---|
| | From | To | |
| 1 | 20.2372 and above | | 0.5% |
| 2 | 18.0261 | 20.2367 | 0.8% |
| 3 | 16.1294 | 18.0242 | 1.1% |
| 4 | 14.0757 | 16.1291 | 1.4% |
| 5 | 10.8337 | 14.0753 | 1.7% |
| 6 | 6.5649 | 10.8329 | 2.0% |
| 7 | 0.0008 | 6.5643 | 2.3% |

If this tax table were used, then Boise Cascade would move up from rate class 5 (1.7% in 1970) to rate class 4 (1.4% in 1970).

The Department of Employment contends that the original *schedule,* the preparation of which was discussed above, was properly used to determine Boise Cascade's tax rate in light of the new input (i. e., the correct benefits figure). If the correct benefits amount had been used in determining Boise Cascade's position in the first instance, it and some twenty-seven other employers with experience factors below Boise Cascade's corrected experi-

ence factor of 14.1258 would have been assigned a rate of 1.7%. For this reason, upon the discovery of the erroneous figure, Boise Cascade was reassigned a rate of 1.7%; however, because I.C. § 72–1351(a) (6) provides that one employer's change shall not affect the rates originally assigned to other employers, those twenty-seven employers who were originally assigned a rate of 1.4% were allowed to keep this rate, even though their experience factors are now less than Boise Cascade's experience factor, as corrected. The result is that even though Boise Cascade has a better experience factor (after correction) than these twenty-seven other employers, Boise Cascade must pay a higher rate (1.-7%) than the rate of (1.4%) they are allowed to pay. It should be noted, though, that Boise Cascade is paying no more than it would have paid if the correct benefits figure had been used in the first instance— but those twenty-seven other employers are allowed to pay less than they would have paid if the erroneous benefits amount had not been used to compute Boise Cascade's original experience factor. This anomalous situation results mainly from the fact that Boise Cascade had such a large payroll amount (almost nine million dollars) relative to the cumulative total of all payroll amounts.

The first issue raised by this appeal is one of statutory construction: Did the Department of Employment properly follow the procedure set out in I.C. § 72–1351(a) (6)? More specifically, was Boise Cascade "placed in that position on *the schedules* which [it] would have occupied had [the correct figure] been used in determining [its] position in the first instance"? (It might be noticed that the statute uses the plural "schedule*s*"; I.C. § 72–1351(a) (2) requires the preparation of one schedule for each of two different categories of employers—"eligible" and "deficit"— but only one of the two schedules is involved in this case.) The second issue raised is whether Boise Cascade has been denied equal protection because it must pay taxes at a higher rate than some twenty-seven employers with less favorable experience factors.

█ In regard to the statutory interpretation question, the Department of Employment contends that it has used the only "schedule" mentioned in the statute and that Boise Cascade was in fact placed in the position on that schedule which it would have occupied had the correct figures been used in determining its position in the first instance. The Industrial Accident Board so held, and we agree. Boise Cascade's position on this issue is untenable, for three reasons:

First, under the company's interpretation (i. e., that the tax *table* set out above must be used to determine the effect of a change in figures), the statute's instructions could not be carried out in all cases; thus, for example, if a change in both experience factor *and payroll amount* were to take place, it would be impossible to put the employer in that position on the *table* which he would have occupied had his *payroll amount* as changed been used in determining his position in the first instance, since *payroll amounts* are not listed on the tax *table* at all. Section 72–1351(a) (6) must have reference to the original *schedule,* the preparation of which is required by the statute and in which payroll amount *is* one of the variables.

Second, the tax *table* published and sent to employers does not contain a continuum of experience factors; there are gaps between the high limit of a lower bracket (under "To") and the low limit of a higher bracket (under "From"). For example, referring to the 1970 tax table set out above, there is a gap between 14.0753 in rate class 5 and 14.0757 in rate class 4. If Boise Cascade's experience factor had improved from 14.0753 to only 14.0755, how could this employer have been placed in that position on the tax *table* which it would have occupied had its experience factor as changed been used in determining its position in the first instance? It is clear that in such a case the tax *table*

relied upon by the appellant could not possibly have been used to determine its tax rate based upon this new experience factor. Section 72–1351(a) (6) does not contemplate the use of a summary tax *table* such as that relied upon by the appellant; this *table* is not the schedule discussed at length in § 72–1351 and, as shown here, in many cases it could not even possibly be employed in the manner required by § 72–1351(a) (6).

Third, § 72–1351(a) (6) itself expressly refers to *schedules* on which employers are "listed." Employers are not listed on the *table* relied upon by the appellant; therefore, § 72–1351(a) (6) does not contemplate placing the employer in the position he would have occupied on such a tax *table*.

Turning now to the appellant's equal protection argument, we once again point out that Boise Cascade is paying no more than it would have paid if the correct benefits figure had been employed in the first instance. The appellant contends that equal protection has been denied because others who would have had to pay 1.7% if the correct figure had been used in the first instance are allowed to pay only 1.4%, and because the appellant has a "better" experience factor than those who are allowed to continue paying less after the change. Thus, the appellant challenges the statutory exception which provides that "such change shall not affect the position or rate classification of any other employer listed on the schedules." I. C. § 72–1351(a) (6). The legislature has the power to make classifications for taxation purposes and in so classifying to make reasonable exceptions. State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P. 2d 244 (1939); United Pacific Ins. Co. v. Bakes, 57 Idaho 537, 67 P.2d 1024 (1937). The appellant concedes that the equal protection clause does not deny to the legislature the power to treat different classes of employers in different ways, so long as all those similarly situated are treated alike. We hold that Boise Cascade and those excepted employers with less favorable experience factors are not similarly situated. After the statutory schedule had been compiled, Boise Cascade had a change in its benefits amount (and therefore its experience factor) which the others did not. Moreover, all employers have an equal opportunity to qualify for the stated exception; that is, they are accorded the equal benefit (or burden) of keeping the tax rate originally assigned to them, even though they would have been in a different bracket if the correct figures had been used in the first instance. Furthermore, the exception provided for is reasonably related to the legitimate goal of making the administration of the employment security system a feasible endeavor. The Department of Employment has pointed out that it would be faced with a heavy, if not insurmountable, burden if it had to change the positions of other employers with less favorable experience factors. Such a requirement would entail the collection of deficiencies from many of those employers, which would necessitate giving each of those affected an opportunity for a hearing. The result might very well be that these complicated schedules would have to be completely recompiled every time one employer's basic figures turned out to be incorrect. We conclude that I.C. § 72–1351(a) (6) does not violate the equal protection clause of the Fourteenth Amendment.

Judgment affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.