Charles B. Swartwood, J.
These are proceedings under CPLR article 78 to annul the separate orders of the respondent revoking "all hunting, trapping and big game licenses and all bow hunting stamps” held by the petitioners for a period of five years under ECL 11-0719 (subd 1).
There is no dispute as to what occurred procedurally. On December 12, 1973 both petitioners were arrested by an Environmental Conservation officer for jointly taking a doe deer out of season on that date in violation of ECL 11-0901 (subd 10), which is a misdemeanor (ECL 71-0921). On the same date both plead guilty to the charge before a Justice of the Peace and wpre convicted thereof. These convictions were affirmed on appeal to the Schuyler County Court but the sentences were modified in People v Heath (77 Misc 2d 215).
On February 21, 1974 the Department of Environmental Conservation by letter notified each petitioner that he had been convicted of taking a doe deer out of season in violation of ECL 11-0901 (subd 10) and as a result the department could revoke his license and deny the privilege of obtaining such a license for a period not to exceed five years. The letter then advised that action in the matter would be withheld for a period of 10 days to give each petitioner an opportunity to submit any written statement he cared to make on his behalf. Petitioner Heath availed himself of the opportunity and sent in the affidavit he had submitted to the Schuyler County *219 Court on his appeal from his conviction. Petitioner Elliott did not submit a statement.
It should be noted that the petitioners both claimed they killed the doe, which they allege had been seriously wounded, for humanitarian reasons; that they were not told by the Justice of the Peace that a plea of guilty to the charge might result in the loss of their hunting privileges and that the Conservation Officer who was present told them he did not know if they would be subject to loss of their hunting privileges if they plead guilty and were convicted.
In September, 1974 the Department of Environmental Conservation revoked petitioners’ hunting, trapping and big game licenses and bow hunting stamps and their privilege of obtaining such again until January 1, 1979, a period of about four years and three and a half months. Their rights to apply for fishing licenses were not affected.
The petitioners contend that the orders suspending their licenses should be annulled because: (1) they were not given advance warning that a conviction of violation of ECL 11-0901 (subd 10) might result in the loss of their hunting privileges pursuant to the provisions of ECL 11-0719 (subd 1) before they plead guilty; (2) that they were denied due process of law by the revocation of their licenses without a hearing before the department and therefore such action was illegal; and (3) that the order of the Department of Environmental Conservation was arbitrary.
At the outset it should be pointed out that we may not review or set aside under a CPLR article 78 proceeding the criminal convictions of the petitioners (CPLR 7801, subd 2). These convictions have been affirmed on appeal.
There is no provision in any statute analogous to subdivision 1 of section 1807 of the Vehicle and Traffic Law which requires that prior to entering a plea of guilty to a charge of violating the Fish and Wildlife article of the ECL that the defendant must be advised that he may lose his hunting privileges on conviction of the charge. There are many other licenses, including those involving property rights, that may be lost on conviction of the holder of certain crimes even though there is no statutory requirement that such a licensee be advised before entering a plea that he may lose his license upon being convicted. Therefore there was no requirement, statutory or otherwise, that these petitioners be advised before *220 pleading guilty to the criminal charges that they might lose their hunting privileges.
The more serious question is whether the petitioners were deprived of the constitutional right to due process by having their licenses to hunt revoked without being afforded a hearing by the Department of Environmental Conservation. Concededly they were given a statement of the reason for the proposed revocations.
ECL 11-0719 (subd 1) provides that where a licensee is convicted of illegally taking a doe deer, as these petitioners were, the department may revoke any license to hunt, fish or trap, etc. and may also deny the privilege of obtaining any such licenses for a period not exceeding five years. There is no requirement for a prior hearing. Under this first subdivision there must have been a prior conviction in a criminal proceeding. ECL 11-0719 (subd 2) provides for a hearing prior to revocation and suspension where a licensee has been charged with certain dangerous conduct with a firearm or a longbow as specifically set forth in that subdivision. It is evident that the Legislature felt that a criminal proceeding leading to a conviction was notice and hearing enough on which to base a revocation of a license under the first subdivision. Under subdivision 2 of that section there might well not be any criminal proceedings and revocation is not based on the conviction of a crime.
Though this statute does not expressly provide for a hearing, a right to such a hearing may be implied if the interest of these petitioners in their licenses to hunt amounts to a property right which is constitutionally protected under the due process clause (Matter of Hecht v Monaghan, 307 NY 461).
The inquiry then is whether the petitioners have a “property right” in their licenses to hunt.
It was stated in Board of Regents v Roth (408 US 564, 570-571): “to determine whether due process requirements apply in the first place, we must look not to the 'weight’ but to the nature of the interest at stake.” (See, also, Arnett v Kennedy, 416 US 134.) There is no question that either petitioner’s “liberty” as defined in the Roth case has been affected by the act of revocation. Any damage to their reputations would have come about as a result of the criminal proceedings. However, if the petitioners had "property rights” in their licenses, they would be entitled to notice and a hearing.
*221 We must therefore determine the nature of the interest these petitioners had in their hunting licenses. "Property”, of course, includes many interests other than ownership of real or personal property as is outlined in Roth and Arnett by the Supreme Court. Of course, labeling a license as a privilege, as the statute does, does not determine the issue which is to be decided rather by the substance of the grant of the right to hunt embodied in the license.
We find no New York cases dealing directly with the nature of the right to take wild game as granted by a hunting or fishing license. However, in Barrett v State of New York (220 NY 423, 427), the Court of Appeals stated with respect to ownership of wild animals in general as follows: "As to the first, the general right of the government to protect wild animals is too well established to be now called in question. Their ownership is in the state in its sovereign capacity, for the benefit of all the people. Their preservation is a matter of public interest. They are a species of natural wealth which without special protection would be destroyed. Everywhere and at all times governments have assumed the right to prescribe how and when they may be taken or killed. As early as 1705 New York passed such an act as to deer. (Colonial Laws, vol 1, p 585.) A series of statutes has followed protecting more or less completely game, birds and fish.” .
In Lansden v Hart (168 F2d 409, cert den 335 US 858), it was held that a presidential proclamation could validly prohibit the killing of wild geese within a designated area. The court stated with respect to the permission to hunt as follows (p 412): "No property rights of plaintiffs are involved in these proceedings inasmuch as no person has any property right in live migratory birds and the withdrawal of the privilege of hunting such birds by Federal and State Governments does not deprive anyone of a property right because no such right exists. Permission to hunt, given from time to time by the Federal and State regulations, is not a grant of property, but merely the grant of a privilege. Magner v People, 97 Ill. 320; American Express Co. v People, 133 Ill. 649, 24 NE 16 S Ct 600, 40 L Ed 793; Geer v State of Connecticut, 161 US 519.” (To similar effect see Bishop v United States, 126 F Supp 449, 451.) It should be noted further that the petitioners were in no way dependent on their licenses for their livelihood. We conclude therefore that the licenses to hunt granted these petitioners did not vest in them any property right, the *222 revocation of which would require due process including a hearing. The licenses involved here were privileges only.
In any event the statutory provision under which these licenses were revoked requires that the revocation be predicated on a conviction in a criminal court. The criminal proceeding provides an adequate opportunity for a hearing. (Cf. S. T Grand, v City of New York, 32 NY2d 300.) Further, they were advised of the reasons for the proposed revocations and were given an opportunity to submit an explanation to the department, which satisfies one’s sense of fairness in dealing with these privileges under these circumstances.
We find no evidence that the respondent’s action was arbitrary. These petitioners did not bring themselves within ECL 11-0919 which provides that wildlife in distress may be captured and protected since concededly they shot a doe, skinned it and hung it up in a garage without notifying the proper authorities. The respondent was not required to accept the petitioners’ version of the event, especially in view of their convictions.
Respondent is granted judgment.