813 P.2d 375

Roy Francis REISENAUER, and Catherine Taufen Reisenauer, Husband and Wife, and as Guardians Ad Litem of Jacob Edward Reisenauer and Rachel Anne Reisenauer, Minor Children, Plaintiffs–Appellants,

v.

STATE of Idaho, DEPARTMENT OF HIGHWAYS, a Municipal Corporation, Defendant–Respondent.

No. 18601.

Court of Appeals of Idaho.

July 1, 1991.

---

Stellmon & Mosman, Moscow, for plaintiffs-appellants.

Robert L. Trabert, Chief Legal Counsel, Patrick W. Fanning, Steven M. Parry, Idaho Dept. of Transp., Boise, for defendant-respondent.

SILAK, Judge.

This is an inverse condemnation case. The district court granted summary judgment against appellants, the Reisenauers, on their claim of inverse condemnation. For the reasons stated below, we affirm.

In the 1930s, the State of Idaho purchased a strip of property in Latah County, which was a part of a larger parcel, to use in a realignment project on U.S. Highway 95. This land was purchased for the sum of $1,101.75 from Arthur Carpenter and the Estate of Jesse Carpenter, the predecessors in interest to the land now owned by the Reisenauers. Arthur Carpenter executed a right of way deed in favor of the State of Idaho. The record does not disclose whether any type of condemnation proceeding took place. After the state acquisition, Arthur Carpenter and the Estate of Jesse Carpenter had recorded title to a little more than 453 acres of land and had transferred 14.69 acres to the State.

In 1943, members of the Reisenauer family acquired title to a large portion of the remaining property through a warranty deed. In 1974, the title passed to Roy F. Reisenauer, who is the current owner of the property. The affidavit of his wife, Catherine Reisenauer, indicates that the Reisenauer residence has existed at its current location since 1948. The house is located approximately one hundred feet from the west edge of the highway right-of-way. Near the Reisenauers' house, the highway makes a long, downhill curve to the right in the northbound traffic lane. In 1978, the State completed the addition of a third lane, or passing lane, on this section of highway. The new section is within the right-of-way purchased in 1937, though the edge of the highway was moved six feet closer to the Reisenauer residence. The downhill traffic lane was moved six feet further away from the plaintiffs' residence.

According to the affidavit of the defense expert, the improvement added a third lane for southbound, uphill traffic which required little or no revision of the highway alignment or grade. The speed limit along this section of highway is fifty-five miles per hour. The plaintiffs' highway expert stated in his affidavit that the median speed of the motor vehicles travelling

along that portion of the highway is fifty-eight miles per hour and that the maximum safe speed around that curve is fifty miles per hour. The state concedes that it has placed no signs along or near the portion of the highway adjacent to the Reisenauers' house to warn motorists of the curve or advising them to reduce the speed of their vehicles.

Since the new project was completed, there have been at least nine occasions on which motorists have failed to negotiate the turn in the highway and have skidded across the Reisenauers' yard. In the worst case, the driver of a pickup truck lost control of his vehicle and left the highway. The pickup smashed through two fences, smashed a boat parked outside, and crashed through the wall into their three-and-one-half-year-old son's bedroom. The pickup crushed the boy's bed. Fortunately, the boy was not in the bed at the time. On two of the other occasions, large trucks lost control, rolled over, slid and came dangerously close to the Reisenauers' residence. In 1984, the state built a guardrail along the highway adjacent to the Reisenauers' house.

The Reisenauers allege that the continuing infringement on their property impairs their right to the quiet enjoyment of their home because they fear for their physical well-being. They contend that this amounts to a taking of their private property and have thus brought the present action in inverse condemnation.[1]

The state filed its first motion for summary judgment, alleging that there had been no taking of the Reisenauers' property and, in the alternative, that the state had previously compensated the Reisenauers' predecessors in interest. The district court denied the state's first motion for summary judgment because it found there was a disputed issue of material fact with regard to whether the repeated intrusions were of such frequency and severity as to create a taking of some portion of their property. The district court also found that the State

had not presented adequate evidence on the issue of prior compensation and refused to grant summary judgment on that issue.

The state filed a second motion for summary judgment with an accompanying affidavit which provided uncontroverted evidence that the Reisenauers' predecessors in interest had received compensation for the right-of-way deed purchased by the state in 1937. It also proved the chain of title from the predecessors in interest through the current title holders. Based on this evidence, the district court granted the state's motion for summary judgment on the issue of prior compensation. The district court also held that no new or additional servitude had been placed upon the Reisenauers' property.

 As a preliminary matter, we note our standard for review. In the present case, the defendant requested a trial by jury. In an eminent domain action, the only issue for the jury is compensation for the land and the damages thereto. The issue of whether a taking occurred is a question of law for the trial court to determine. *Tibbs v. City of Sandpoint,* 100 Idaho 667, 670, 603 P.2d 1001, 1004 (1979), citing *Rueth v. State,* 100 Idaho 203, 215–222, 596 P.2d 75, 87–94 (1978), *appeal after remand* 103 Idaho 74, 644 P.2d 1333 (1982) [hereinafter *Rueth I* ].... Because it is a question of law, it is a question over which we exercise free review. The parties are not entitled to a jury trial on the question whether a taking occurred. Thus, we apply the standard of *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982), that when a trial court rules on summary judgment in a case without a jury, the judge is required to view conflicting evidence in favor of the losing party, but not necessarily to draw inferences from uncontroverted facts in the losing party's favor; rather, the judge can draw those inferences which he or she deems most probable. Upon thus viewing the facts, the court will determine whether either party is entitled to judgment as a matter of law.

---

1. The Reisenauers' complaint alleged two causes of action. The first cause of action sounded in inverse condemnation. The second cause of action sounded in tort. The latter was dismissed pursuant to a stipulation between the parties.

An inverse condemnation case is a civil action predicated upon our Idaho constitution. The Constitution of the United States and the Idaho State Constitution prohibit the governmental taking of private property without just compensation being paid to the persons who have an interest in the property.[2] Article I, Section 14 of the Idaho State Constitution states:

> **Right of Eminent Domain.**—The necessary use of lands for the construction of reservoirs or storage basins, for the purpose of irrigation, or for rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use for any useful, beneficial or necessary purpose, or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps, or other necessary means to their complete development, or any other use necessary to complete development of the material resources of the state, or the preservation of the health of its inhabitants, is hereby declared to be a public use, and subject to the regulation and control of the state.
>
> Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor.

██ In general, when the state wishes to acquire private property for a public use, it will initiate a condemnation proceeding. When the state appropriates property without going through the procedure of a condemnation, the property owner may initiate a suit and request compensation. As the Supreme Court noted in *Rueth I,* "[a]n inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemnor. The principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action." *Rueth I,* 100 Idaho at 220, n. 4, 596 P.2d at 92, *citing Breidert v. Southern Pacific Company,* 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964).

**2.** The Reisenauers' complaint alleges a governmental taking only under the Idaho State Constitution; it does not allege a taking under the

██ We turn first to the question whether the district court correctly determined that the fact that the state had previously paid for the 14.69 acres it acquired in 1937 barred the Reisenauers from obtaining any further compensation for damages arising from the 1978 redesign of the highway. It is uncontroverted that Arthur Carpenter and the estate of Jesse Carpenter, predecessors in interest to the Reisenauers, received $1,101.75 for the right-of-way deed in 1937.

The resolution of this case is governed by a 1935 case. In *Powell v. McKelvey,* 56 Idaho 291, 53 P.2d 626 (1935), our Supreme Court ruled that a Nampa downtown business owner was not entitled either to compensation for a governmental taking or for consequential damages resulting from the construction of a subway in front of his business. The court concluded that no taking had occurred because the business owner had not been denied all means of ingress and egress. In determining that the business owner was not entitled to consequential damages, the court construed Article I, section 14 of our state constitution:

> Under the provisions of art. 1, sec. 14, *supra,* municipal corporations, in order to acquire a right to establish a public use, must first pay a just compensation for the land so taken. When so taken the municipality is authorized ... to grade or establish grades of streets and repair and maintain the same. *The rule would seem to be, under the above constitutional provision, that any damages or injuries sustained by the owner of abutting property, are but consequential damages, or damnum absque injuria for which no recovery can be had, for the reason that all such damages are included in the payment of a just compensation when the land was taken....* In the case of *Idaho etc. Ry. Co. v. Columbia etc. Synod,* 20 Ida. 568, 119 Pac. 60 [ (1911) ], which was an action brought under the eminent domain statutes for the purpose of determining the value of the property sought to be

United States Constitution. For this reason, we will apply only Idaho law to the taking issue.

taken and damage to the property not taken, in the course of that opinion it was held that damages should be assessed once and for all time and should be based upon the most injurious use to which the condemnor may lawfully put the property.

*Powell* at 309–310, 53 P.2d at 634 (citations omitted; emphasis added). The *Powell* court went on to conclude that:

> *[i]f* this is a correct statement of the rule, at the time the municipality acquired the right of way for street purposes, appellant or his predecessor was given damages once and for all time, based upon the most injurious use of the land reasonably possible to which the city might lawfully put it.

*Powell* at 310, 53 P.2d at 634 (emphasis added).

Applying this rule of law to the present case, we conclude the district court correctly held that the Reisenauers are not entitled to further compensation for the alleged inverse condemnation due to the 1978 road changes. As additional support for this conclusion, we adopt the language from *American Jurisprudence 2d* which the district court cited in its opinion:

> Often, after land has been taken for a particular public use and devoted to that use in the customary manner for a number of years, an increase in the public requirements makes an altered or increased use of the land desirable. In such a case, if the new use is of the same character as the use for which the land was taken, and merely amounts to the advancement of the original purpose, as when the wrought portion of a highway is widened so as to include the whole of the original location, or a second track is laid upon a railroad right of way, there is only an exercise of the easement which had been taken in the first place, and the owner of the fee has no ground for complaint, even if he is deprived of privileges in the land taken which he had previously enjoyed, *or his remaining land suffers damages from the increased use by the public from which it had previously been exempt.* All these damages were

paid for when the original taking was made, and the owner's good fortune in not suffering injury for several years for which he had been fully paid cannot be the basis of a property right protected by the Constitution, or entitle him to be paid both when the right to inflict the damage is acquired by the public and when the damage is actually inflicted.

26 Am.Jur.2d *Eminent Domain* § 206, at 889 (1966) (emphasis added). Because it is clear that the Reisenauers' predecessors in interest were paid just compensation for the right-of-way acquired by the state in 1937, the Reisenauers cannot obtain any additional compensation for alleged inverse condemnation.

■ In the district court's second opinion on summary judgment, it concluded that no new or additional servitude had been placed on the Reisenauers' property. The district court made no factual findings regarding this issue, but we must surmise from its holding that, after additional consideration, the court found the facts as originally presented were sufficient to make a determination of whether or not a new taking had occurred. As support for its conclusion that no new or additional servitude had been placed on the Reisenauers' property, the district court cited Nichols on Eminent Domain:

> [I]f the new use to which it is desired to devote the land *is of the same character as the use for which it was taken* and merely amounts to the advancement of the original purpose ... the new use is only an exercise of the easement which has been taken in the first place, and the owner of the fee has no ground for complaint, even if he is deprived of opportunities to make use of the land taken which he had previously enjoyed, *or his remaining land suffers damages from which it had previously been exempt,* by reason of the increased use by the public of its easement in the land taken. All these damages were paid for when the easement was taken, and the owner's good fortune in escaping for several years an injury for which he had been fully paid cannot be the basis of a prop-

erty right protected by the Constitution, or entitle him to be compensated both when the right to inflict the damage was acquired by the public and when the damage is actually inflicted.

3 Nichols, *Eminent Domain,* § 9.21, at 9–34 (J. Sackman rev. 3d ed. 1990) (emphasis added). *See also Phoenix Title & Trust Co. v. Arizona Public Serv. Co.,* 8 Ariz.App. 221, 445 P.2d 169, 173–4 (1968). Based on this language, the district court found that the 1978 redesign of Highway 95 did not create a new or additional servitude upon the Reisenauers' land. The state continued to use its land for a highway. Though the state added a new passing lane, the basic character of the use did not change. Although additional traffic traveling at higher rates of speed does amount to a change in the degree of use, it does not amount to a change in the type of use, and thus, does not violate the existing easement. Implicit in the district court's holding is a finding that the intrusions on the Reisenauers' property were not of such frequency and severity as to constitute a taking. We agree. *Cf. Tibbs v. City of Sandpoint,* 100 Idaho 667, 603 P.2d 1001 (1979) (no prior compensation, evidence of intrusion from airport justified grant of new trial motion in inverse condemnation case).

We affirm the district court's order granting summary judgment on the basis that the State has proved that there is no genuine issue of material fact regarding whether prior compensation had been obtained and whether a new taking had occurred.

No attorneys fees awarded. Costs to Respondent.

WALTERS, C.J., and SWANSTROM, J., concur.