33 P.3d 213

STATE of Idaho, Plaintiff–Respondent,

v.

Laura THOMPSON, Wendall P. Thompson, Eldon C. Palmer, Defendants–Appellants.

No. 26391.

Court of Appeals of Idaho.

May 10, 2001.

Review Denied July 16, 2001.

Daniel L. Hawkley, Boise, for appellants.

Hon. Alan G. Lance, Attorney General; William M. Loomis, Deputy Attorney General, Boise, for respondent. William M. Loomis argued.

Before SCHWARTZMAN, Chief Judge, LANSING, Judge, and HART, Judge Pro Tem.

PER CURIAM.

Laura Thompson, Wendall Thompson, and Eldon Palmer appeal from their judgment of conviction for misdemeanor offenses related to killing a deer out of season. The defendants assert that their constitutional rights

were violated. For reasons expressed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

Laura Thompson was troubled by wild deer eating plants in her garden. Four days before archery hunting season was to open in 1998, she saw a buck bedded down under a tree in her backyard. She knew that hunting season was not open, but nevertheless asked her son, Wendall Thompson, to shoot the deer. Wendall shot the animal, after which Laura and Wendall gutted and skinned the deer and then gave the head, hide and hooves to their neighbor, Eldon Palmer. In an effort to cover up the unlawful taking and possession of the deer, Palmer telephoned the Department of Fish and Game ("the Department") and requested a depredation permit that would authorize the taking of a deer out of season. After Department personnel informed Palmer that such a permit would not be issued so close to the opening of hunting season, Palmer disclosed that the deer had already been killed.

Laura, Wendall and Palmer were all charged in connection with the incident. Wendall was charged with unlawful taking of wildlife, Idaho Code § 36–1101(a); Laura with criminal solicitation of a crime, I.C. § 18–2001; and Palmer with aiding in the commission of a misdemeanor, I.C. § 18–304. Before their trial, the defendants filed a motion to dismiss the charges, asserting that § 36–1101(a) was unconstitutional because it impermissibly placed limitations on the constitutional right to protect one's property. The magistrate denied the motion. The defendants then filed a motion for reconsideration in which they argued that the statute prohibiting the killing of a deer out of season violated the defendants' rights to equal protection and was an unconstitutional taking by the government without just compensation or due process. The magistrate denied the motion for reconsideration. Thereafter, a trial was conducted and the jury found the defendants guilty of the charged offenses.

The defendants appealed to the district court, which affirmed the judgment of conviction. On further appeal to this Court, the defendants assert that there is a constitutional right to protect one's property against wildlife and that such a right supercedes the State's right to regulate wildlife; that they were denied their constitutional right to equal protection because Idaho law differentiates between livestock owners and all others with respect to the killing of wild animals for purposes of protecting property; and asserts that, through the deer's consumption of garden plants, the State took Laura's property without due process or just compensation.

## ANALYSIS

### A. Reasonable Limitations on the Constitutional Right to Protect One's Property

■ The defendants first contend that I.C. § 36–1101, which prohibits killing deer out of hunting season, is in contravention of the constitutional right to protect one's property afforded by Article I, § 1 of the Idaho State Constitution. This constitutional right, they argue, supercedes the State's authority to regulate wildlife.

■ The constitutionality of a statute is a question of law over which this Court exercises free review. *Meisner v. Potlatch Corp.*, 131 Idaho 258, 260, 954 P.2d 676, 678 (1998); *State v. Branson* 128 Idaho 790, 791, 919 P.2d 319, 320 (1996); *State v. Casey*, 125 Idaho 856, 857 n. 2, 876 P.2d 138, 139 n. 2 (1994); *State v. Wood*, 125 Idaho 911, 913, 876 P.2d 1352, 1354 (1993); *Harris v. State, Dep't of Health & Welfare*, 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992).

Article I, § 1 of the Idaho Constitution states: "All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety." This constitutional provision was discussed in *Newland v. Child*, 73 Idaho 530, 254 P.2d 1066 (1953), as follows:

> The right to own and enjoy private property is fundamental. It is one of the natural, inherent and inalienable rights of free men. It is not a gift of our constitutions, because it existed before them. Our constitutions embrace and proclaim it as an

essential in our conception of freedom. This right of property, though of such high order, is nevertheless subject to reasonable limitation and regulation by the state in the interests of the common welfare. Indeed, a statute imposing any limitation upon the right must be supported by such purpose.

*Id.* at 537, 254 P.2d at 1069 (citations omitted). Thus, this Court is presented with the narrow constitutional question of whether I.C. § 36–1101 promotes the common welfare and is a reasonable limitation upon an individual's right to protect her property.

The defendants, citing I.C. § 36–103(a), assert that the sole public purpose underlying the prohibition on killing a deer out of season is to provide continual supplies of deer for hunting. Therefore, according to the defendants, the statutory scheme promotes only the interest of hunters, which is a special interest, and the statute is not in the interest of the common welfare.

We disagree. The defendants selectively recite only the last phrase of I.C. § 36–103(a). The complete statute provides:

All wildlife, including all wild animals, wild birds, and fish, within the state of Idaho, is hereby declared to be the property of the state of Idaho. *It shall be preserved, protected, perpetuated, and managed.* It shall be only captured or taken at such times or places, under such conditions, or by such means, or in such manner, *as will preserve, protect, and perpetuate such wildlife,* and provide for the citizens of this state and, as by law permitted to others, continued supplies of such wildlife for hunting, fishing and trapping.

I.C. § 36–103(a) (emphasis added). Thus, the statute's plain language expresses that an underlying purpose of the State's wildlife policy, from which the prohibition on killing deer out of season stems, is the preservation, protection, and perpetuation of wildlife. There are diverse ways in which such a policy serves the common welfare of the citizens of Idaho. As the district court observed, "One reason to preserve wildlife is to provide a supply of animals for hunters and fisherman [sic], but there are many other reasons to preserve wildlife including main-

taining biological diversity and encouraging tourism and wildlife viewing." Our Supreme Court has held that: "The State has a compelling interest in the management and conservation of its natural resources, including wildlife.... [F]ish and game violations are matters of grave public concern...." *State v. Medley,* 127 Idaho 182, 186, 898 P.2d 1093, 1097 (1995). A similar sentiment was expressed by this Court recently in *State v. Thurman,* 134 Idaho 90, 996 P.2d 309 (Ct. App.1999), where we stated, "The wild game within our state belongs to the people as a whole in their collective, sovereign capacity and is treated as a common trust." *Id.* at 97, 996 P.2d at 316. Thus, we have no difficulty concluding that statutory limitations on the killing of depredatory deer out of season serve the common welfare of the people of this State.

We next examine this State's particular statutory scheme to determine whether it constitutes a *reasonable* limitation on the right of property protection. We find that Idaho Code § 36–1108 provides several means by which citizens may be protected from depredating wildlife without resorting to out-of-season killing. The statute provides that if a property owner makes a report that property is being, or is about to be, damaged or destroyed by wildlife, the Department must investigate the complaint within seventy-two hours. I.C. § 36–1108(a). If the complaint is determined to be well-founded, the Department may take any of several corrective measures. First, the Department may send a representative to "control, trap, and/or remove such animals as will stop the damage to said property." I.C. § 36–1108(a)(1). The Department may also grant to the complainant "properly safeguarded permission" to take those same measures. I.C. § 36–1108(a)(2). Third, when other means are unsuccessful, the Department may enter into an agreement with the property owner to allow continued use of lands by the animals, with financial compensation provided to the owner for crop damage caused by the wildlife. I.C. § 36–1108(a)(3), (b). The Department is also authorized "to provide support and assistance, including provision of materials to design, construct,

and maintain fences for control of depredation." I.C. § 36–1108(b)(1). In addition to these broad remedies, the Department may authorize emergency depredation hunts, I.D.A.P.A. 13.01.08.800, and emergency feeding of depredating animals, I.D.A.P.A. 13.01.18.102.01.a.

In the present case, the record discloses that the Department had on several occasions advised Laura Thompson on methods to keep the deer away and also gave her depredation control supplies. During the year previous to these offenses, the Department had offered to have experienced hunters reduce the deer population around Laura's home, but this offer was refused.

Thus, Idaho law provides multiple methods of assistance to property owners to prevent depredation and to compensate for crop damage already done, and assistance had been made available to Laura Thompson for methods which could have been lawfully employed to rid her garden of the deer. We therefore conclude that the I.C. § 36–1101 prohibition against killing deer out of hunting season is a reasonable limitation on Laura Thompson's right to protect her property and does not violate Article I, § 1 of the Idaho Constitution.

## B. Equal Protection

The defendants next assert that the statutory scheme prohibiting gardeners from killing a deer out of season is a violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Idaho Constitution. These clauses require that all similarly situated persons receive the same benefits and burdens of the law. *State v. Hansen*, 125 Idaho 927, 933, 877 P.2d 898, 904 (1994); *Bon Appetit Gourmet Foods, Inc. v. State Dep't of Employment*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989); *State v. Breed*, 111 Idaho 497, 725 P.2d 202 (Ct.App.1986).

The defendants argue that equal protection guarantees are violated because ranchers may kill predators in order to protect their livestock without first obtaining a Fish and Game permit, while a gardener may not use lethal means to protect her produce without advance permission from the Department. The defendants base their argument upon I.C. § 36–1107(b), which allows livestock owners to kill wildlife out of hunting season if their livestock is being attacked by predatory animals. The statute provides:

> Black bear, mountain lion, and predators may be disposed of by livestock owners, their employees, agents and animal damage control personnel when same are molesting livestock and it shall not be necessary to obtain any permit from the department. Mountain lion so taken shall be reported to the director. Livestock owners may take steps they deem necessary to protect their livestock.

We conclude that persons in the classifications encompassed by the defendants' argument—gardeners and livestock owners—are not similarly situated or "in like circumstances," *Breed, supra.* There are vast dissimilarities in the circumstances of these two types of property owners and their ability to prevent loss from wildlife predation. Livestock is most likely to be threatened by predators on open range in remote areas where fencing out or guarding against wild predators is not a practical option. It would be extremely difficult, if not impossible, for livestock owners to protect their stock throughout a range or pasturage that may cover hundreds or thousands of acres. Further, livestock owners can suffer severe financial loss from a single incident of predation. A garden, by contrast, may be more practicably protected by fencing, a guard dog, chemical repellants, or mechanical alarms that frighten wildlife. A predatory beast in the act of attacking livestock is considerably less likely to be frightened away and may well present a danger to humans or guard dogs who might attempt to rescue livestock. For these reasons, we conclude that owners faced with the risk of loss of livestock to predators are not in "like circumstances" with gardeners troubled by grazing wildlife. In *Black v. Peter Kiewit Sons' Co.*, 94 Idaho 755, 758, 497 P.2d 1056, 1059 (1972), our Supreme Court noted that persons who "are not similarly situated, ... do not have to be treated equally." *See also Boise Cascade Corp. v. Dep't of Employment*, 94 Idaho 721, 725, 496 P.2d 958, 962 (1972). Therefore,

defendants have not shown that Idaho's statutory scheme governing property owners' use of lethal means to protect their property from predating wildlife violates the equal protection clauses of the state and federal constitution.

## C. Government Taking Without Compensation

■ As their last argument on appeal, the defendants assert that the deer's consumption of Laura Thompson's garden produce constitutes a taking of property by the State without just compensation or due process of law. The defendants point out that I.C. § 36–103(a) provides that all wildlife within the State of Idaho is the property of the State, and therefore it was a State-owned deer that ate Laura Thompson's garden vegetables. Because the State provided no compensation for this taking, the defendants argue that the State has violated Article I, § 13 of the Idaho State Constitution and the Fifth Amendment to the United States Constitution.

We find the defendants' argument misplaced. First, a claim for the government's unlawful taking without just compensation is a civil action and is not a defense to a criminal charge. As the district court explained:

> In general, when the state wishes to acquire private property for public use, it will initiate a condemnation proceeding. When the state appropriates property without going through the procedure of condemnation, the property owner may initiate a suit and request compensation. *Reisenauer v. State Dep't of Highways,* 120 Idaho 36, 39, 813 P.2d 375[378] (1991). An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemnor. *Id.* While Laura Thompson is free to pursue an action for inverse condemnation, such action is a civil action and is not a defense to a criminal charge. Even assuming that the consumption of plants by wild animals constituted a government taking, as the State points out in its brief, the remedy is an award of compensation; the fact that a taking may have occurred does

not invalidate the statutory scheme prohibiting the taking of wildlife.

■ Second, in order for the government to be liable under a theory of a government taking without just compensation, it is axiomatic that there must be a state act. The conduct of a depredating animal is not a state act. *See Christy v. Hodel,* 857 F.2d 1324, 1334–35 (9th Cir.Mont.1988) (government prevention of landowner from protecting sheep by shooting marauding grizzly bears did not constitute a taking); *Mountain States Legal Found. v. Hodel,* 799 F.2d 1423, 1429 (10th Cir.1986) (no taking when wild horses caused damage to and reduced value of private lands); *Bishop v. United States,* 130 Ct.Cl. 198, 126 F.Supp. 449, 452–53 (1954) (government not liable for damage to private property by migrating geese); *Jordan v. State,* 681 P.2d 346, 350 n. 3 (Alaska Ct.App.1984) (defendant not deprived of property interest in moose carcass by state law prohibiting the killing of a bear which attacked the carcass); *Leger v. Louisiana Dep't of Wildlife & Fisheries,* 306 So.2d 391, 394–95 (La.Ct.App.1975) (state has no duty to prevent deer from damaging private property); *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 482–83 (Me.1982) (protective zone on timberlands for benefit of deer constitutional); *Barrett v. State,* 220 N.Y. 423, 116 N.E. 99, 101–02 (Ct.App.1917) (state not liable for damage to timber done by beavers). Accordingly, we find no merit in the defendants' argument that Laura Thompson's property has been taken for a . public use and that this event somehow makes the defendants' prosecution unconstitutional.

## CONCLUSION

We conclude that none of the defendants' challenges to their misdemeanor convictions are meritorious. Therefore, the judgment of conviction is affirmed.

Chief Judge SCHWARTZMAN
CONCURRING:

I fully concur in the opinion of this Court. There is something about dispatching a three-point buck bedded down on a languid afternoon under a tree in Ms. Thompson's

backyard that does not have quite the same thrust, and ring of exigency, as "black bears," "mountain lions" and other marauding "predators" molesting livestock. Nor does this appear to be the *stuff* of constitutional necessity,[1] as opposed to frustration, in dealing with the Fish and Game bureaucracy. And just why Laura, Wendall and later Eldon combined to make matters worse by gutting, skinning, dehoofing and deracking our trespassing quadruped (aka *Flag II*, see below) eludes me.

Be that as it may, I would commend to all parties a nostalgic return to Marjorie Kinnan Rawling's novel entitled *The Yearling*, also made into a wonderful movie of the same name in 1946. Perhaps this could put the case into better perspective, although any similarity between *Flag I* and *Flag II* is purely coincidental.

---

1. No request for a common law "necessity" instruction was apparently made or argued for at trial. *See* Idaho Criminal Jury Instruction 1512; *State v. Howley*, 128 Idaho 874, 920 P.2d 391 (1996).