## IDAHO DEPARTMENT OF EMPLOYMENT *v.* SMITH

No. 76–1291.   Decided December 5, 1977

PER CURIAM.

Petitioner challenges a ruling of the Idaho Supreme Court that the denial of unemployment benefits to otherwise eligible persons who attend school during the day violates the Equal Protection Clause of the Fourteenth Amendment.  Idaho Code § 72–1312 (a) (1973) states that "no person shall be deemed to be unemployed while he is attending a regular established school excluding night school . . . ."  The Idaho Supreme Court held that this provision impermissibly discriminates between those unemployed persons who attend night school and those who attend school during the day and that petitioner could not constitutionally deny unemployment benefits to an otherwise eligible person such as respondent whose attendance at daytime classes would not interfere with employment in her usual occupation and did not affect her availability for full-

time work. We grant the petition for certiorari and reverse the judgment of the Idaho Supreme Court.

The holding below misconstrues the requirements of the Equal Protection Clause in the field of social welfare and economics. This Court has consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge* v. *Williams,* 397 U. S. 471, 485 (1970), quoting *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78 (1911). See also *Massachusetts Board of Retirement* v. *Murgia,* 427 U. S. 307 (1976); *Mathews* v. *De Castro,* 429 U. S. 181 (1976); *Jefferson* v. *Hackney,* 406 U. S. 535 (1972). The legislative classification at issue here passes this test. It was surely rational for the Idaho Legislature to conclude that daytime employment is far more plentiful than nighttime work and, consequently, that attending school during daytime hours imposes a greater restriction upon obtaining full-time employment than does attending school at night. In a world of limited resources, a State may legitimately extend unemployment benefits only to those who are willing to maximize their employment potential by not restricting their availability during the day by attending school. Moreover, the classification serves as a predictable and convenient means for distinguishing between those who are likely to be students primarily and part-time workers only secondarily and thus ineligible for unemployment compensation and those who are primarily full-time workers and students only secondarily without the necessity of making costly individual eligibility determinations which would deplete available resources. The fact that the classification is imperfect and that the availability of some students desiring full-time

employment may not be substantially impaired by their attendance at daytime classes does not, under the cases cited *supra,* render the statute invalid under the United States Constitution.

*Reversed.*

Mr. Justice Blackmun, concurring.

Petitioner Department ruled that respondent became ineligible for state employment insurance benefits when she "enrolled in summer school" (Pet. for Cert. 3) and attended classes from 7 a. m. to 9 a. m., Monday through Friday. These early morning hours of instruction obviously preceded the working day of a retail clerk, respondent's occupation. I would have thought, in light of the fact those school hours did not impinge upon the working day, that the Supreme Court of Idaho might have regarded this as attendance at "night school," within the meaning of Idaho Code § 72–1312 (a) (1973). That court, however, chose not to do so and, instead, rested its decision upon difficult and precarious federal equal protection analysis. Correct equal protection analysis, it seems to me, necessarily redounds to petitioner's, rather than respondent's, benefit, and I therefore am compelled, albeit somewhat reluctantly (because the respondent, who was without counsel in the state proceedings, will never understand why the law is against her in this respect), to join the Court's opinion summarily reversing the judgment of the Idaho court.

Mr. Justice Brennan, with whom Mr. Justice Marshall joins, dissenting in part.

I agree with my Brother Stevens that there is no basis for granting certiorari in this case. I add only that, for me, the record presents serious problems of mootness that have been addressed by neither party's counsel and, in addition, I question whether the federal issue argued by the State here was properly presented below. In light of these additional problems, our summary reversal may indeed "create the unfortunate

impression that the Court is more interested in upholding the power of the State than in vindicating individual rights." *Post,* at 105.

Nonetheless, if the federal issue is properly before us, I must agree that the Supreme Court of Idaho committed error. See *Ohio Bureau of Employment Services* v. *Hodory,* 431 U. S. 471 (1977). This does not mean, of course, that respondent must lose her unemployment benefits. As my Brother BLACKMUN notes, the Supreme Court of Idaho on remand may well want to consider whether the purpose of the Idaho Legislature in passing the "night school" provision of Idaho Code § 72–1312 (a) (1973) would not be better served by construing that phrase to include early morning classes, which like night classes are apparently intended by their provider, Boise State University, to allow persons both to work (or seek work) and to go to school. If this construction is not adopted, the court may want to consider whether the Idaho Constitution invalidates § 72–1312 (a). See generally Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977).

MR. JUSTICE STEVENS, dissenting in part.

In defining the jurisdiction of this Court to review the final judgments rendered by the highest court of a State, Congress has sharply differentiated between cases in which the state court has rejected a federal claim and those in which the federal claim has been vindicated. In the former category our jurisdiction is mandatory; in the latter, it is discretionary.[1]

---

[1] Title 28 U. S. C. § 1257 provides:

"§ 1257. State courts; appeal; certiorari

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

."(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

"(2) By appeal, where is drawn in question the validity of a statute of

Our jurisdiction in this case is in the discretionary category. The Idaho Supreme Court has ordered the Idaho Department of Employment to pay benefits to an Idaho resident, resting its decision on an interpretation of the Fourteenth Amendment. Since this decision does not create a conflict and does not involve a question of national importance, it is inappropriate to grant certiorari and order full briefing and oral argument.

Even though there was error in the Idaho Supreme Court's use of the Fourteenth Amendment as a basis for providing an Idaho resident with more protection than the Federal Constitution requires, I do not believe that error is a sufficient justification for the exercise of this Court's discretionary jurisdiction. We are much too busy to correct every error that is called to our attention in the thousands of certiorari petitions that are filed each year. Whenever we attempt to do so summarily, we court the danger of either committing error ourselves or of confusing rather than clarifying the law.[2] This risk is aggravated when the losing litigant is too poor to hire a lawyer, as is true in this case.[3] Moreover, this Court's

---

any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

"(3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a State statute is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States.

"For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."

[2] Cf. *Hammer* v. *Oregon State Penitentiary*, 276 Ore. 651, 556 P. 2d 1348 (1976), summarily vacated and remanded, *post*, p. 945. (STEVENS, J., dissenting).

[3] Respondent originally submitted a *pro se* letter in opposition to the petition for certiorari. Through the efforts of petitioner itself, a brief was eventually submitted on her behalf by a professor at the Idaho College of Law.

random and spasmodic efforts to correct errors summarily may create the unfortunate impression that the Court is more interested in upholding the power of the State than in vindicating individual rights.

For these reasons, although I have no quarrel with the majority's analysis of the merits, I think it would have been wise for the Court to deny certiorari in this case.