Geraldine WALKER, Linda Neff, Ronald Moculski and Todd Clark, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Helen O'BANNON, Individually and in her capacity as Secretary of Public Welfare for the Commonwealth of Pennsylvania, Defendant.

Civ. A. No. 80–353.

United States District Court, W. D. Pennsylvania.

April 3, 1980.

Memorandum Granting Final Judgment April 10, 1980.

Edward J. Feinstein and Lucinda Bush, Neighborhood Legal Services, Pittsburgh, Pa., for plaintiffs.

Robert S. Englesberg, Deputy Atty. Gen., Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

This Court has before it the equal protection challenge by recipients of assistance from the Pennsylvania Department of Public Welfare (DPW) to the Pennsylvania Legislature's elimination of certain individuals from such assistance by Act No. 1979–102, passed December 7, 1979 and effective 60 days thereafter, which provides:

> "No general assistance shall be paid to any full-time student at a college or university who has not participated in a federally subsidized program for dependent children within the previous five years." (Amending 62 P.S. § 403)

The debate leading up to the passage of this statute charged that able bodied (capable of working) young people were "emancipating"[1] themselves from parents financially able to support them by going to college, and thus becoming eligible for assistance

---

1. The statutory definition of emancipation is contained in 62 P.S. § 2331(f):

"A minor, whether legitimate or illegitimate, cannot be emancipated before age sixteen, and becomes emancipated absolutely at age twenty-one, if then of sufficient mental ability to make a bargain. After age sixteen and before age twenty-one, a minor of sufficient mental ability to make a bargain may become emancipated by his own acts or the acts of the parent, stepfather or stepmother having had the custody. . . . ."

The definition of emancipation is elaborated upon in the Public Assistance Manual, 55 Pa. Code § 145.62:

"*Emancipated Minor*—This term shall include the following:

(i) A minor who is aged 16 or over, who has left the parental household and has established himself as a separate entity free to act upon his own responsibility, and who is capable of acting independently of any parental control. If such a minor again lives with his parents he will no longer be considered emancipated unless he remains independent of his parents' control.

(ii) An orphan who is aged 16 or over and who has sufficient mental ability to make a bargain.

(iii) A minor who is married, regardless of whether the person continues to live in the parental household. If the marriage is terminated by divorce or death of the spouse, the minor is still emancipated. If the marriage is terminated by annulment, the state of emancipation is as though the marriage had never occurred.

(iv) An unmarried child committed to the care and control of the county authority can become emancipated before the age of 18 only by action of the court."

An emancipated minor need only meet the general eligibility requirements to receive general assistance. See footnote 3. An emancipated minor is eligible for general assistance only if (i) the child does not qualify for the Aid to Families with Dependent Children Program, (ii) the person with whom the child is living exercises responsibility for the care and control of the child, and (iii) the person with whom the child is living complies with child support requirements. *See* 55 Pa.Code § 145.63.

payments.[2]  The Legislature chose to use a yardstick of a previous need in the family as evidenced by participation in a federally funded program for needy dependent children within the past five years.[3]

All of the named Plaintiffs, as well as others who testified were given written notice of termination of their benefits effective March 27, 1980, or shortly thereafter.[4]  All of the witnesses would otherwise have qualified for assistance at the time of their termination notice.  Action was promptly filed, individually and on behalf of a class,[5] and on March 20, 1980, after notice and hearing, an injunction was issued.  A second hearing was held on March 28, 1980, at which both parties were given ample opportunity to develop the record;  the injunction was to continue until final adjudication on the merits.[6]

A parent is not considered a "legally responsible relative" (for support purposes) of an emancipated minor.  *See* 55 Pa.Code § 187.22.

2.  The eligibility provisions for general assistance are outlined at 55 Pa.Code § 141.61.  Generally, eligibility requires that the person is not receiving State Blind Pension or Supplemental Security Income, and that the person is not eligible for AFDC because of definitive conditions;  however, an individual meeting definitive conditions but ineligible for AFDC because of income or resources is not eligible for general assistance.  (The basic definitive conditions for AFDC are contained in 55 Pa.Code §§ 151.-41, 153.41—the child must be living with a specified relative capable of and responsible for the care and control of the child, and further that a child is deprived of support of one or both of its parents for reasons specified in the regulations.)  Specific requirements involve such matters as age, residence, citizenship, employment, etc.;  the policy governing the basic determination of need is found at 55 Pa.Code § 171.21—a person, or a group applying together for assistance, is in need if income and other available resources, as defined in the regulations, are less than the family allowances as established by regulation.  The difference is the amount of the assistance grant.

3.  The Secretary of Public Welfare recently issued regulations listing the federally subsidized programs for dependent children which qualify.  They are ADC, ADC–U, AFDC, AFDC–U, ADC–F or AFDC–F.  *See* 55 Pa.Code § 141.-61(a)(1)(xiii).
   The Aid to Families with Dependent Children program (AFDC), Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, provides financial assistance to families with needy dependent children—needy because of the death, absence, or incapacity of a parent (AFDC), or because of a parent's unemployment (AFDC–U).  Payment is also authorized when the children are living in approved foster homes (AFDC–FC).
   The program is administered by participating states, in conformity with federal standards, and is financed by the Federal Government and the States on a matching funds basis.

4.  The notice provided in pertinent part:

"This is to notify you that beginning 3/27/80 this office has decided to:
   Discontinue your assistance checks
We plan to take the action because of the following facts and regulations:
   'A new Act of the Legislature, Act 102 of 1979, prohibits full-time College or University students from receiving General Assistance benefits unless that person has received Federal money under a program for dependent children within the previous five years.  This office has determined that you are no longer eligible for General Assistance benefits because you are a full-time College or University student and have not received Federal money under a program for dependent children within the previous five years.  Therefore, your General Assistance benefits are being terminated.'
   'This termination is taking place because of a change in State law.  Therefore, you may not appeal under Department Regulation PAEM 275.1(a)(4)(ii)(A)(II), if you are appealing the termination of your benefits simply because the law has changed and now excludes you from benefits.  However, if you question the finding that (1) you did not receive Federal money under a program for dependent children within the previous five years, or (2) of your status as a full-time College or University student, you do have a right to appeal and benefits will be continued pending your appeal if you appeal on or before the date indicated on the PA 162–A.' "

5.  With the consent of the Commonwealth, the Court ordered the action be maintained on behalf of all persons residing in the Commonwealth of Pennsylvania and who, although otherwise eligible for General Assistance, have been denied or will be denied General Assistance because of their status as full-time college or university students who have not participated in a federally funded program for dependent children within the past five years.

6.  A temporary restraining order which is issued with notice and an adversary hearing may be treated as a preliminary injunction.  *See Dilworth v. Riner*, 343 F.2d 226 (5th Cir. 1965) (order denying temporary restraining order af-

## I.

As previously analyzed by our Court of Appeals in *Medora v. Colautti,* 602 F.2d 1149 (3rd Cir. 1979),[7] Pennsylvania provides general assistance welfare benefits to all of its needy and distressed citizens, administered by the DPW.

Thus, in Pa.Stat.Ann., Title 62, Section 401 *et seq.* (Purdon 1968), the purpose of Public Welfare is given:

"To promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; that assistance shall be administered promptly and humanely with due regard for the preservation of family life, and without discrimination on account of race, religion or political affiliation; and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency, and a desire to be a good citizen and useful to society."

And, in 62 P.S. § 408, the DPW is given: "[T]he duty to take measures not inconsistent with the purposes of this article [Public Assistance]; and when other funds or facilities for such purposes are inadequate or unavailable to provide for special needs of individuals eligible for assistance; to relieve suffering and distress arising from handicaps and infirmities; to promote their rehabilitation; to help them if possible to become self-dependent; and, to cooperate to the fullest

extent with other public agencies empowered by law to provide vocational training, rehabilitative or similar services."

On March 8, 1980, in order to implement the statutory change, DPW published modifications to its regulations pertaining to general assistance eligibility, to deny general assistance benefits to any full-time college student who has not "participated in a federally subsidized program for dependent children" in the past five years.[8]  55 Pa. Code § 141.61.

The testimony of the named Plaintiffs and several nonnamed members of the class was that they could not continue their college education if general assistance benefits were terminated.  (See Addendum to this Opinion as to each witness.)  Several were handicapped and attending college under the guidance of the Pennsylvania Bureau of Vocational Rehabilitation, and were presently unable to be employed.  Most were 21 years of age or older, the age beyond which parents are no longer required to support them.

Counsel for both sides introduced evidence to give some statistical understanding of the characteristics of full-time college students receiving general assistance which was not specific enough to be of much guidance.  There appears, however, to be approximately 1,700 general assistance recipients who are full-time college students and who have not participated in federally

---

ter full scale hearing was in substance and result the denial of a preliminary injunction); Wright & Miller, *Federal Practice & Procedure: Civil* § 2951.

The label attached to a proceeding by a trial court is not controlling in determining whether the proceeding falls under F.R.Civ.P. 65(a) or 65(b) for purposes of appellate review.  *Sampson v. Murray,* 415 U.S. 61, 87, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Adams v. Vance,* 570 F.2d 950, 953 (D.C.Cir. 1977).

**7.** In *Medora v. Colautti, supra,* plaintiffs attacked a regulation of the Pennsylvania Department of Public Welfare under which the blind, aged or disabled were required to apply for federal Supplemental Security Income (SSI) benefits prior to applying for state general assistance benefits, and, if the individual were blind, aged or disabled but ineligible for SSI for

some other reason, the person was barred from applying for general assistance even though had the person not been blind, aged or disabled, he or she would have qualified as needy under the more liberal state general assistance criteria.  The court struck down the regulation on equal protection grounds.

**8.** Under DPW regulations, full-time college students were to lose not only state funded general assistance benefits, but also federally funded medical assistance benefits and federal food stamps.  At the preliminary injunction hearing, the Commonwealth conceded that terminating medical assistance and food stamps was inconsistent with federal laws and agreed that the Commonwealth would not terminate these benefits.  The challenge to termination of these benefits is therefore not before us.

subsidized programs for dependent children. Of these, 257 are attending a college or university as part of their vocational rehabilitation. An undetermined number in the Commonwealth are attending school under a joint federal-state program—the Comprehensive Educational Training Act (CETA). Some 300 CETA employees attend Allegheny Community College and 44 of these are on general assistance. The Commonwealth also offered the testimony of the Director of Financial Aid for a state college who outlined federal and state programs available for funding the college educations of needy students, including tuition, room and board.[9]

## II. *Standard of Review*

■ There is no constitutional right to receive public welfare, *Smith v. Reynolds*, 277 F.Supp. 65 (E.D.Pa.1967), *aff'd* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), nor is there a constitutional right to an education. *Guadalupe Organization, Inc. v. Tempe Elementary School District*, 587 F.2d 1022 (9th Cir. 1978), citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

Where the challenge is to state regulation in the social and economic field (because the result is disparity in grants of welfare payments), not affecting freedoms guaranteed by the Bill of Rights:

"[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it is does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' 'A statutory discrimination

will not be set aside if any state of facts reasonably may be conceived to justify it.'"

*Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970) (citations omitted).

As previously noted, the Third Circuit precisely defined in *Medora v. Colautti*, 602 F.2d 1149 (3rd Cir. 1979), traditional equal protection analysis where the regulation purposefully created discrepant treatment involving denial of all benefits of a certain welfare program. Then, the courts are to "more closely examine the rationality of the underlying classification," and determine whether the classification advances some state interest.

■ We do not believe this case is controlled by the heightened scrutiny standard of *Medora*. Significantly, if a full-time student were to drop to part-time status or cease college studies, general assistance benefits resume. The legislation is not so much a denial of all benefits to a class of individuals, as it is a denial of a college education financed, in part, through general assistance without a previous history of family need. There are, as noted, other forms of state and federal assistance available only to college students. The Commonwealth has not denied all benefits, and this distinction becomes important as noted by the Third Circuit in *Medora*:

"The reasoning of [the Supreme Court cases dealing with non-suspect but sensitive classifications is] that no group should be singled out and burdened because of a characteristic over which they have no control . . . ."

602 F.2d at 1155 n. 12. *See also Rasmussen v. Toia*, 420 F.Supp. 757 (S.D.N.Y.1976).

■ Thus, we proceed to determine if there is a reasonable basis to justify the classification established by the Pennsylvania Legislature.[10]

---

9. These programs included the Basic Educational Opportunity Grant (BEOG), the Pennsylvania Higher Education Assistance Agency Grant (PHEAA), Supplemental Educational Opportunity Grant (SEOG), the National Direct

Student Loan (NDSL), state backed loans, and work study program.

10. Where the statute challenged is to be judged by the standard of rationality rather than by the strictest scrutiny, the burden remains on

### III. *Rational Relation to the State Interest*

■ The legislative intent in passing the Pennsylvania Public Welfare Code is embodied in 62 P.S. § 401:

"To promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; . . . ."

The legislation on which we are focusing is an attempt to remove undeserving individuals from the public welfare rolls—undeniably a legitimate governmental objective.

■ On the one hand, a "needy" person does not lose that status simply by enrolling full-time in college. However, looking deeper into the Public Welfare Code, we see that encouraging self-support and employment are integral to the statutory scheme.

■ Under 62 P.S. § 405.1, Pennsylvania Employables Program, every individual, as a condition of continuing eligibility for general assistance, must register for employment, and any individual who fails to register or refuses a bona fide offer of employment is ineligible for general assistance. *See also* 55 Pa.Code §§ 165.23–.24. And, under 62 P.S. § 432.3, a person who voluntarily terminates his employment for purposes of qualifying for assistance is disqualified from receiving assistance until he is willing to comply with 62 P.S. § 405.1, noted above. The state has a legitimate interest in encouraging those of its citizens who can work to do so and thus contribute to the societal well-being in addition to their personal and family support. *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 413, 93 S.Ct. 2507, 2512, 37 L.Ed.2d 688, 694 (1973); *Dandridge v. Williams, supra*. As the Supreme Court stated in *Lavine v. Milne*, 424 U.S. 577, 585 n. 9, 96 S.Ct. 1010, 1015, 47 L.Ed.2d 249 (1976):

"Welfare benefits are not a fundamental right, and neither the State nor Federal Governments are under any sort of constitutional obligation to guarantee minimum levels of support. A provision de-

nying benefits to those who quit their jobs to obtain relief is a perfectly legitimate and reasonable legislative response to the risk that the availability of welfare benefits might undermine the incentive to work." (Citations omitted).

We are not here however faced with the contention that full-time students voluntarily removed themselves from the labor market, so that removing such individuals from the benefit rolls is reasonably justified by the state's interest in providing for the needy and encouraging employment. The state has opted to remove the limited class of those who do not show prior participation in federally funded aid to dependent children programs.

We turn to the Supreme Court's decision in *Idaho Dept. of Employment v. Smith*, 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977), where the state denied unemployment benefits to those who attended day school while granting unemployment benefits to those who attended night school. The Court denied the equal protection challenge, saying:

"It was surely rational for the Idaho Legislature to conclude that daytime employment is far more plentiful than nighttime work and, consequently, that attending school during daytime hours imposes a greater restriction upon obtaining full time employment than does attending school at night. In a world of limited resources, a state may legitimately extend unemployment benefits only to those who are willing to maximize their employment potential by not restricting their availability during the day by attending school."

434 U.S. at 101, 98 S.Ct. at 328, 54 L.Ed.2d at 327.

While *Idaho Dept. of Employment* is, of course, distinguishable because unemployment benefits were involved there and we are concerned here with general assistance benefits, it cannot be disregarded when availability for employment in Pennsylva-

---

those challenging the statute to demonstrate the insubstantiality of the relation between the statutory purpose and the classification.

*Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651, 664 (1976).

nia is intrinsically related to providing *only* for the needy, as outlined above.

This Court recognizes that certain students may be required to cease college studies and, because of other circumstances such as health, handicaps, or dependents, may be unable to be employed. The Court may strongly question the logic of the legislation as it affects these individuals, particularly handicapped students. However, it was rational for the Legislature to require full-time college students to have had a previous family history of need. Hence, the legislation denying general assistance benefits to college students survives equal protection analysis.[11]

As set forth above, the statute does not deny all college students all general assistance benefits. Part-time students, students who participated in a federally subsidized program for dependent children within the previous five years, and students attending vocational schools are not denied general assistance. Herein lies Plaintiffs' strongest argument for they contend that since not all students are excluded, availability of employment is not the purpose for the legislation; there is then no governmental purpose or rational basis for the disparate treatment of them.

Each exception raises different considerations and are treated separately.

### A. Part-time versus Full-time

*Idaho Department of Employment* effectively eliminates any argument that such a distinction is irrational:

"[T]he classification [between daytime students and nighttime students] serves as a predictable and convenient means for distinguishing between those who are likely to be students primarily and part-time workers only secondarily and thus ineligible for unemployment compensation and those who are primarily full-time workers and students only secondarily without the necessity of making costly individual eligibility determinations which would deplete available resources." 434 U.S. 101, 98 S.Ct. at 328, 54 L.Ed.2d at 327–28.

Here, full-time students, as opposed to part-time students, have voluntarily removed themselves from the labor market and can reasonably be classified for assistance purposes.

### B. Students who have participated in federally subsidized programs for dependent children

Aid for Families with Dependent Children (AFDC), 42 U.S.C. § 601 *et seq.*, a federal program, provides financial assistance to families with needy dependent children, needy because of the death, absence, incapacity or unemployment of a parent. *See Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979).

From the legislative debates on the Pennsylvania statute, the concern which prompted the provision under attack here was to prevent students, under the age of 21, supported by their parents through grade and secondary school, from becoming "emancipated" and then qualifying for general assistance benefits while attending college. Considering the eligibility requirements for participation in the AFDC program, students who have participated come from economically depressed families, and the Commonwealth suggests that granting general assistance benefits to such students while they are attending college will help break the poverty cycle.

11. "[T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning, [v. Family Publications Service, Inc.] supra* [411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)]. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than non-members. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522, 545–46 (1975).

We agree with the Commonwealth that former participation in an AFDC program is reasonably related to an expectation of family support while attending college. In *United States Department of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), there was a due process challenge made to a provision of the Food Stamp Act that any household, which includes a member who has reached his eighteenth birthday and who is claimed as a dependent child for federal income tax purposes by a taxpayer who is not a member of an eligible household, shall be ineligible to participate in the food stamp program during the tax period claimed, and the following year. The Court could not find a rational basis for assuming that a child was not indigent in one year because the parent declared the child as a dependent in the tax return for the previous year. In other words, there was no rational basis between tax dependency and support.

Here, there is a rational relationship between participation in a AFDC program and family ability to support. Undeniably, there are students who did not participate in AFDC programs but who come from economically depressed families. Underinclusiveness or imperfection in drawing the line, however, is not a basis for invalidating the statute. *Dandridge v. Williams, supra.*

### C. *Vocational Schools*

The statute denies benefits to full-time students at colleges or universities. The regulations define "college or university" as:

"An institution of higher learning that has been approved by the Secretary of Education and which offers a post-secondary program of education leading to the award of a degree, such as Associate or Bachelor. 'College' includes Junior Colleges and Community Colleges, and the like, offering a two-year educational program as well as colleges offering a four-year program."

55 Pa.Code § 141.62. Vocational education is defined in the Pennsylvania School Code as "any form of education of less than college grade, given in school or elsewhere, the purpose of which is to fit an individual to pursue effectively a recognized profitable employment whether pursued for wages or otherwise." 24 P.S. § 18–1801.

Under the statute here, the state will pay general assistance benefits to full-time students attending vocational schools but denies benefits to full-time college students. The twin goals of such a distinction were pointed out in *Alexander v. Swank*, 314 F.Supp. 1082 (N.D.Ill.1970), *rev'd* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971): aiding the needy to become employable, and insuring fiscal integrity of state welfare programs. In reversing on other grounds, the Supreme Court, in dicta, questioned the rationality of the classification as a means of furthering the goal of aiding the needy to become employable and self-sufficient, since the state offered no evidence that those with a vocational training are more readily employable than those with a college education. 404 U.S. at 291, 92 S.Ct. at 507, 30 L.Ed.2d at 456. However, as to the second interest, preserving fiscal integrity, the Court did not question the rationality but noted that the state's discretion was limited since the benefits were being administered under a joint federal-state program.

General assistance is exclusively a state funded program and the state must have discretion in allocating its limited resources. Vocational training is, for the most part, shorter in duration than college training, looking toward entry into the labor market more rapidly, and thereby conserving welfare funds. This is a rational basis for this distinction.

As did the lower court in *Alexander v. Swank, supra,* we are inclined to question the wisdom of extending aid only to vocational school students, and we recognize that a case-by-case determination of a student's family's ability to give support through college would seem to better accomplish the legislative objective. However, we find that the government interests here are legitimate and that the classification is rationally related to furthering those interests.

An order shall be entered denying the request for an injunction and dissolving the preliminary injunction issued March 19, 1980; however, prior to any termination of general assistance benefits to full-time college students, the Department of Public Welfare shall be required to comply with its regulations regarding notice.[12] 55 Pa.Code § 133.1 *et seq.*

### ADDENDUM

Ronald A. Moculski, a 30 year old full-time college student enrolled at Butler Community College as a Business Administration major with an anticipated graduation date of 1983, testified that his only income was $172.00 monthly general assistance benefits. His education is financed through PHEAA and BEOG grants. He became eligible for Bureau of Vocational Rehabilitation (BVR) services in 1977 after suffering an accident that caused his left arm to become paralyzed with nerve damage. He is presently receiving a series of corrective operations to reconstruct his left hand and is unable to resume his previous occupation as a meat cutter. He testified that if his general assistance were discontinued, he would be unable to complete his college education, although medical assistance payments would be sufficient to pay for the operations to his hand.

Shirley Higgins, a 41 year old full-time student at Duquesne University, is a Sociology major with an anticipated graduation date of May 1980. She currently receives $98.50 every two weeks in general assistance. Her education is paid for by a PHEAA grant and a BEOG grant. She had her first "real job" last summer at a Community Development Center for mentally retarded persons, and was responsible for their care. Prior to this, she was a drug addict for approximately 20 years. She was forced to quit her employment at the Community Development Center after suffering a back injury. Miss Higgins testified that if her general assistance was discontinued, she would have to quit school, and would be unable to work due to her back injury. She has no funds or family to assist her with support.

Kaycee Claus is a full time college student at the University of Pittsburgh, majoring in Computer Science and Philosophy. She expects to graduate in April 1981 and desires to work as a Computer Programmer. Miss Claus presently receives monthly general assistance benefits of $172.00. She suffers from both psychomotor and petit mal seizures. Her BVR counseler referred her to general assistance because she was unable to continue her employment at a pizza shop and at the same time maintain the credit hours and grade point average required by the BVR. Since receiving general assistance, both her health and grade point average have improved. She testified that if her assistance is discontinued, she will quit school and try to find a job at a place where they don't ask medical questions.

Miss Claus was informed by her parents when she was 18 that her parents would not support her. She said her family's income is also considered to meet BVR standards.

Linda Neff, 29 years old, attends Butler Community College as a full-time student and will receive an Associate's Degree in General Studies in 1981; she then hopes to transfer to the University of Pittsburgh. She receives $172 monthly in general assistance; her schooling is financed through PHEAA and BEOG grants. She also participates in a BVR program. She suffers from osteoporosis, a disease of the spine, and Crohn's disease, a chronic bowel inflammation which requires a series of operations. Because the spinal disease is getting progressively worse, she is unable to sit or stand for extended periods of time, and therefore is unable to perform secretarial and office work as she did previously. In

---

12. The Department of Public Welfare sent notices to full-time college students in March. However, the Court believes that with the issuance of a preliminary injunction, many students will be confused as to their status. In an abundance of caution, the Court will require the Department of Public Welfare to again notify the students of the termination in accordance with its regulations.

1977 she worked for the Government as a File Clerk and received $6500–$7000. In 1978 she earned $700–$800. She testified that if her general assistance is discontinued, she will have to quit school and has no idea how to support herself.

The medical assistance program has taken care of her operations but she continues her coverage under Blue Cross and Blue Shield because she would not be able to get insurance if she were not on welfare.

She resides with her parents who are both retired, and pays them $108.00 as regularly as possible for a car they bought which she uses. She pays them $35.00 monthly rent.

The parties stipulated that Geraldine Walker and Todd Clark would testify in accordance with their affidavits which were previously filed.

The affidavit of Geraldine Walker set forth that she is a full-time college student enrolled in Allegheny Community College and expects to receive an Associate's Degree in Accounting in December 1980. She has been receiving general assistance, food stamps, and medical assistance since 1973; prior to this, she received public assistance as part of her parents' household. Her income consists of $134.00 monthly general assistance and $30.00 weekly from CETA. If her general assistance is discontinued, she is uncertain whether she will be able to continue her education.

The affidavit of Todd Clark indicates he is a full-time college student at Slippery Rock State College and will receive a Bachelor of Arts Degree in Communications in May 1983. He is presently receiving $172.00 per month from DPW, and has received it for the past six years. He has also received medical assistance and food stamps, and the BVR is sponsoring his schooling. His family has received benefits from SSI, DPW funds, food stamps and medical assistance. If his general assistance is discontinued, he will not be able to continue his schooling since he will not be able to pay his $150.00 per month rent.

Barbara Groves is a 30 year old mother of two, ages 10 and 12, separated from her husband. She attends the University of Pittsburgh full time and expects to graduate in the Spring of 1981 with a Bachelor of Arts Degree in Social Work. She receives $172.00 per month in general assistance and $225.00 per month from her husband for child support. She also receives a BEOG grant and a PHEAA grant.

Beverly Radziukinas is 29 years old and is separated from her husband. She has no children. She is attending Allegheny Community College full time in an accounting transfer program. She expects to receive an Associate's Degree in Accounting this summer and transfer into a Bachelor's Degree program this fall. She receives $172.00 per month in general assistance, and BEOG and PHEAA grants. She testified that she was injured in an automobile accident last year and, because of the injury, is unable to return to her former occupation as a beautician or waitress.

## ON MEMORANDUM GRANTING FINAL JUDGMENT

On April 3, 1980, this Court, after hearing and due consideration of the testimony, arguments and briefs of counsel at a hearing held March 28, 1980 on Plaintiffs' application for declaratory judgment and injunction, issued an Order denying the Plaintiffs' request for injunction and dissolving the preliminary injunction previously issued on March 19, 1980, and further ordering the Secretary to give notice of termination of benefits. The April 3, 1980 Order was entered as the denial of a preliminary injunction under Fed.R.Civ.P. 65(a)(1), although the Opinion somewhat ambiguously was written in the form of an Opinion after final hearing on the merits as provided for in Fed.R.Civ.P. 65(a)(2).

Counsel have agreed that the Court may treat the Order of April 3, 1980 as a final declaratory judgment denying relief to the Plaintiffs in accordance with the April 3, 1980 Opinion of this Court as filed. Final judgment will therefore be entered granting judgment to the Defendants in accordance with the said Opinion.

## ON INJUNCTION PENDING APPEAL

This Court has entered a Final Order entering judgment for the Defendant and denying Plaintiffs' request for injunctive and declaratory relief, thus upholding the constitutionality of the Act of Assembly of Pennsylvania, Act No. 1979–102, terminating general assistance benefits to certain full-time college students. The Plaintiffs have appealed and now move for an injunction pending appeal.

The factors which the Court must consider on a motion for injunction pending appeal are:

" '(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? (4) Where lies the public interest? . . .' "

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir. 1977). *See also Halderman v. Pennhurst State School and Hospital*, 451 F.Supp. 233 (E.D.Pa.1978); *Philadelphia Council of Neighborhood Organizations v. Adams*, 451 F.Supp. 114 (E.D.Pa.1978); *Eastern Milk Producers Co-op Association, Inc. v. Lehigh Valley Co-op Farmers, Inc.*, 448 F.Supp. 471 (E.D.Pa.1978), *aff'd* 582 F.2d 1273 (3rd Cir. 1978). *Cf. Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811 (3rd Cir. 1978). Proper judgment on this motion entails a balancing of those elements and no one factor determines the outcome.

Thus, the movant need only make out a substantial case on the merits if the other three factors strongly favor interim relief. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., supra.*

The termination of general assistance benefits to the Plaintiffs will undoubtedly result in some harm to them. The harm is lessened, however, since the Secretary has agreed to continue benefits until June 1, 1980. Thus, most students will not be eliminated from the general assistance rolls during mid-term and will have an opportunity to explore alternative means of financing their education.

This Court does not believe Plaintiffs made a strong showing of likelihood of success on the merits, or even one in which serious questions without precedential guidance have been raised. Plaintiffs' showing on the merits is particularly inadequate here where the other three factors do not strongly favor interim relief, as hereinafter set forth.

Contrary to the Plaintiffs' assertion, we believe the issuance of the requested injunction would harm the Commonwealth. It would be required to continue to make general assistance payments out of limited funds to a group, we believe, the Legislature rationally classified as not being entitled thereto.

The public interest does not substantially favor the issuance of the injunction. It might be served by temporarily continuing payments to students, for this might quicken their achievement of self-support. However, the public interest is better served by discontinuing the payment of benefits out of limited funds to a group, we believe, the Legislature rationally classified as not entitled to assistance.

The Plaintiffs' Motion for Injunction Pending Appeal will therefore be denied.