793 P.2d 675

**BON APPETIT GOURMET FOODS, INC., Employer Account No.: 122639–8, Employer–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Respondent.**

No. 17122.

Supreme Court of Idaho.

Aug. 31, 1989.

Addendum on Rehearing June 14, 1990.

Law Offices of Kenneth O. Kreis, P.A., Boise, for appellant. Kenneth O. Kreis, argued.

Jim Jones, Atty. Gen., Laura B. Arment, Deputy Atty. Gen., Boise, for respondent. Laura B. Arment, argued.

SHEPARD, Justice.[*]

This is an appeal by Bon Appetit from a decision of the Industrial Commission holding that certain independent contractors are nevertheless covered employees of Bon

---

[*] SHEPARD, J. authored this opinion prior to his untimely death.

Appetit under the provisions of I.C. § 72–1316(d)(2), and hence Bon Appetit is required to pay tax for unemployment compensation. Bon Appetit appeals on the sole basis that the statute is unconstitutional both on its face and as applied in violation of the equal protection clauses of the fourteenth amendment to the United States Constitution and art. 1 § 2 of the Idaho Constitution. We agree and reverse.

The facts are not at issue, and are in effect stipulated. Bon Appetit operates a gourmet food business, and contracts with independent agents to market its products on a door-to-door basis. The contracts between Bon Appetit and its agents are not contested, and clearly delineate a principal-agent relationship. Following an audit of Bon Appetit by the Department of Employment, the Department held that the independent agents were nevertheless "covered employees" and hence Bon Appetit was required to pay unemployment compensation tax. An appeals examiner held that although the agents met requirements to be denominated independent contractors, nevertheless the above statute required their inclusion in covered employment. On appeal to the Industrial Commission it was held and concluded that the intent of the parties as expressed in the contracts, required a holding that the agents were independent contractors, but nevertheless that such independent agents fell within the I.C. § 72–1316(d)(2) definition of covered employment. This appeal results.

The pertinent provisions of I.C. § 72–1316(d) provide:

(d) Services performed by an individual for remuneration shall, for the purposes of the Employment Security Law, be covered employment:

(1) Unless it is shown: (A) that the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and (B) that the worker is engaged in an independently established trade, occupation, profession, or business;

(2) Even though such individual meets the exemption of subsection (d)(1)(A) and (B) but performs services;

(A) As an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages, or laundry or dry cleaning services for his principal;

. . .

■ Thus, under the statute otherwise independent contractors engaged in distributing meat, vegetables, fruit, bakery or beverage products, or conducting laundry or dry cleaning businesses are conclusively held to be "covered employees" and the principals to the principal-agency contract are required to pay "unemployment tax." We are cited to no statute which imposes "employee" status on those who are otherwise independent contractors in such well known fields as the door-to-door vending of cosmetics, magazine and other publications, vacuum cleaners, home cleaning products, or the solicitation of charitable contributions, to mention only a few examples. Clearly, otherwise independent agents who market food or beverage products, or laundry or dry cleaning services on a door-to-door basis, are singled out by the statute from all others in the business of marketing door-to-door. The Department of Employment offers no rationale for such categorization, and we find no rationale therefore expressed in any legislation.

■ As noted above, Bon Appetit asserts the denial of equal protection under both the fourteenth amendment to the United States Constitution, and art. 1 § 2 of the Idaho Constitution. An act of the legislature is presumed to be constitutional, but whether the act is reasonable or arbitrary or discriminatory is a question of law for determination by this Court. *Weller v. Hopper,* 85 Idaho 386, 379 P.2d 792 (1963). The principle underlying the equal protection clauses of both the Idaho and United States Constitutions is that all persons in like circumstances should receive the same benefits and burdens of the law. *Sterling H. Nelson & Sons, Inc. v. Bender,* 95 Idaho 813, 520 P.2d 860 (1974); *State v. Breed,* 111 Idaho 497, 725 P.2d 202 (Ct.App.1986).

This Court has held that a classification for tax purposes is reviewed on the rational basis test. The rational basis test requires that a statutory classification be rationally related to a legitimate government objective. *State v. Breed, id.; Packard v. Joint School District 171,* 104 Idaho 604, 661 P.2d 770 (Ct.App.1983).

■ This Court, in the application of the rational basis test, utilized a two-step analysis in reviewing a classification made for tax purposes. *Evans v. Idaho State Tax Commission,* 95 Idaho 54, 501 P.2d 1054 (1972). That analysis requires first a determination of whether the statute reflects any reasonably conceivable public purpose. Secondly, it is a determination of whether the classification is reasonably related to that purpose. *Evans v. Idaho State Tax Commission, id.*

The statute in question here singles out those who contract with agents for the distribution of "meat products, vegetable products, fruit products, bakery products, beverages or laundry or dry cleaning services," and denominates them as employers who are required to pay unemployment compensation tax. Insofar as we are informed by the parties here, for all other purposes like parties are denominated independent contractors.

We are cited to and find no legislative statement of policy or public purpose for this particular classification. The respondent Department of Employment offers no explanation or justification for such legislative distinction. We are not cited nor have we discovered any reason or rationale stated or furnished in any portion of the Congressional enactments.

■ We have engaged in our own independent analysis to ascertain a legitimate basis for what on its face is a discriminatory tax. We find no such rational basis. We find the particular provisions of I.C. § 72–1316 to be unconstitutional on its face, and as applied, since it denies Bon Appetit equal protection of the laws in violation of the fourteenth amendment of the United States Constitution and art. 1 § 2 of the Idaho Constitution.

The cause is reversed and remanded to the Industrial Commission for the entry of appropriate orders.

BISTLINE and JOHNSON, JJ. concur.

BAKES, Chief Justice, dissenting:

The majority opinion concludes, correctly, that the rational basis test, the most lenient of all tests for equal protection analysis, is applicable to this case. Accordingly, the appropriate formulation of that test is as stated by the United States Supreme Court in *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). Justice Brennan, writing for a nearly unanimous court, stated:

But States are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." ...

Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, [citing cases] they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." *Id.* [*U.S. v. Carolene Products Co.,* 304 U.S. 144], at 154, 58 S.Ct. [778] at 784 [82 L.Ed. 1234 (1938)]. Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.

449 U.S. at 464, 101 S.Ct. at 724. *See also Johnson v. Sunshine Mining,* 106 Idaho 866, 684 P.2d 268 (1984). Since the Industrial Commission is not authorized to pass on the constitutionality of statutes of the Idaho legislature, the Commission had no occasion to establish a factual record to determine upon what basis the legislature might have concluded that "agent-driver[s]

or commission-driver[s] engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages or laundry or dry cleaning services for his principal" are more in need of protection from unemployment than are other types of independent contractors. Accordingly, appellants can mount only a facial attack on the statute, there being no factual record on which to base an equal protection claim.

The decisions of the United States Supreme Court are clear that the regulation of economic activity and the distribution of economic benefits are the types of legislation which are given the broadest discretion under an equal protection clause analysis. If there is any conceivable rational basis for the legislature taking the action which it did, then we must reject the equal protection violation claim. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Johnson v. Sunshine Mining*, 106 Idaho 866, 684 P.2d 268 (1984).

For all we know, the legislature had before it testimony from witnesses, or information gathered by individual legislators, that there was a high degree of unemployment in the agent-driver or commission-driver business involving food or dry cleaning products. That would certainly be a rational basis for the legislature creating the exception from the general rule of non-liability for taxation for services performed by independent contractors engaged in an independently established trade or business. That would be a rational basis for the statute and would be sufficient for the statute to withstand an equal protection challenge. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

Just ten years ago, in another Department of Employment case in which we were proven wrong, this Court also held an act of the legislature unconstitutional as a violation of the equal protection clause. In *Smith v. Department of Employment*, 98 Idaho 43, 557 P.2d 637 (1976), this Court had held that a different exception to the Department of Employment statutes which

provided that "no person shall be deemed to be unemployed while he is attending a regularly established school *excluding night school* ..." (emphasis added) denied equal protection because of a lack of a rational basis for the distinction between attending classes during the day and attending classes at night. The United States Supreme Court summarily reversed our decision, stating,

> It was surely rational for the Idaho Legislature to conclude that daytime employment is far more plentiful than nighttime work and, consequently, that attending school during daytime hours imposes a greater restriction upon obtaining full-time employment than does attending school at night.

*Idaho Department of Employment v. Smith*, 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977).

Today's case could well be paraphrased in the language of the *Smith* case. "It was surely rational for the Idaho legislature to conclude that" agent-drivers engaged in distributing food products were far more susceptible to unemployment than other agent-drivers, and therefore were in need of greater protection, and the state unemployment fund in need of contributions from the principals who employ those agent-drivers. Such a determination by the legislature, even if it were incorrect, an issue which we don't have before us because we have no factual record, nevertheless would be a rational basis for the legislature to make its determination "if the question is at least debatable." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 464, 101 S.Ct. at 724. Accordingly, I.C. § 72–1316(d)(2) easily survives any facial constitutional attack for denial of equal protection.

Accordingly, I would affirm the decision of the Industrial Commission.

HUNTLEY, Justice, dissenting (dissent written prior to his resignation on August 7, 1989).

I must respectfully dissent from the opinion of the majority because its last two paragraphs and its result are premised

upon an allegation by the majority that it did something procedurally which this Court did not do and, in fact, does not have the mechanism to do.

Those paragraphs state that we find no legislative statement of policy for the classification involved and that we have not discovered any reason or rationale. The majority opinion further states that we have engaged in our own independent analysis and we *find* no rational basis. WHERE DID WE LOOK TO FIND THAT WHICH WE DID NOT FIND?

The truth of the matter is, there is no basis for either this Court to make any findings or the Industrial Commission to make any findings because no one has taken any evidence on the issue. The Industrial Commission took no evidence on the issue because it has been of the belief that it did not have the power to pass upon constitutional matters. Therefore, had the Department offered testimony in support of a "rational basis," the Commission would properly have excluded the evidence as being irrelevant as to any issue before the Commission.

This Court did not take any evidence directly, nor did we appoint a Special Master to take evidence for us on what might or might not have been the rational basis for the legislative classifications. Thus, I know not where the majority looked to make its "findings" other than in its genes and hormones.

What I do know is that both the House of Representatives and the Senate of Idaho, by majority vote, concluded that there was a reason and purpose for the classifications which they put into the statute and the incumbent Governor apparently agreed. Upon what foundation is this Court entitled to decide, without the taking of any evidence by any judicial body, that the legislature and the Governor were wrong in determining the classifications provided in I.C. § 72–1316(d)?

I would remand to the Industrial Commission with directions to it to provide a forum for the parties to present testimony on whether the classifications are grounded in some rational basis.

## ADDENDUM ON REHEARING TO THIS COURT'S ORIGINAL OPINION FILED AUGUST 31, 1989

BOYLE, Justice.

In this unemployment compensation tax case we are called upon to determine whether employers are required by Idaho law to pay unemployment compensation tax on independent contractors.

Appellant challenges the provisions of Idaho Code § 72–1316(d)(2) on the grounds that requiring employers to pay tax for unemployment compensation for independent contractors is facially unconstitutional.

Appellant, Bon Appetit operates a gourmet food business which contracts with independent contractors to market its products. Following an audit by the Department of Employment, the Department held that the independent contractors were "covered employees" under Idaho Code § 72–1316(d)(2) and required Bon Appetit to pay the requisite unemployment compensation tax. The appeals examiner held that although the independent agents were clearly independent contractors, the provisions of I.C. § 72–1316(d)(2) required their inclusion as covered employees. On appeal to the Industrial Commission, the holdings of the appeals examiner were adopted.

Under Idaho Code § 72–1316(d)(2), otherwise independent contractors engaged in distributing meat, vegetables, fruit, bakery or beverage products, or conducting laundry or dry cleaning business are held to be "covered employees" and as such are singled out from all others in the business of door-to-door marketing, and as such their employers are required to pay unemployment compensation tax for each independent contractor.

Bon Appetit asserts that such treatment denies it equal protection under both the fourteenth amendment to the United States Constitution, and art. 1 § 2 of the Idaho Constitution. We agree.

In *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d

659 (1981), the United States Supreme Court stated:

Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, (citation deleted) they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable."

*Id.,* 449 U.S. at 464, 101 S.Ct. at 724. In *Clover Leaf,* the Supreme Court held the evidence was conflicting and properly resolved the conflict in favor of upholding the constitutionality of the Minnesota statute. In the case before us, however, we find no conflicting evidence. In fact, as stated in this Court's original opinion, we are cited to and find no legislative statement of policy or public purpose nor explanation or justification for such legislative distinction.

In the original decision filed August 31, 1989, this Court correctly applied the rational basis test to the statute in question and found the particular provisions of I.C. § 72–1316 to be unconstitutional on its face. We continue to adhere to the views expressed in the original opinion authored by the late Chief Justice Shepard. *Bon Appetit Gourmet Foods, Inc., v. State of Idaho, Department of Employment,* # 17122, Slip Op. # 128 (filed August 31, 1989).

The order of the Industrial Commission is reversed and remanded. Costs to appellant. No fees allowed.

BISTLINE, JOHNSON and McDEVITT, JJ. concur.

BAKES, Chief Justice, dissenting:

I dissent from the opinion released by the majority today, entitled an "Addendum on Rehearing to this Court's Original Opinion." Before discussing the substantive aspects of the opinion, I would note that today's opinion is somewhat unusual. Customarily, on rehearing, our practice has been to either affirm our original opinion or withdraw it and issue a new one in its stead. Today, the majority both affirms our initial opinion and offers a new opinion

that seems to supplement, and perhaps, modify our original opinion. In light of today's opinion, I too continue to adhere to the opinions expressed in my dissent to the original opinion in this matter, but would also supplement that dissent by responding to the majority opinion today.

The majority opinion quotes from *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), and then states that:

In *Clover Leaf,* the Supreme Court held the evidence was conflicting and properly resolved the conflict in favor of upholding the constitutionality of the Minnesota statute. *In the case before us, however, we find no conflicting evidence.* In fact, as stated in this Court's original opinion, we are cited to and find no legislative statement of policy or public purpose nor explanation or justification for such legislative distinction. (Emphasis added.)

This statement reveals the error in the Court's reasoning and ultimate conclusion in today's case.

First, as to the statement that "we find no conflicting evidence," that is quite true. However, the reason there is no evidence, or record explaining the legislature's actions, is because this case came to us on appeal from the Industrial Commission, which had no authority to hold unconstitutional an act of the Idaho legislature. *Lynn v. Kootenai County Fire Protection Dist.,* 97 Idaho 623, 624, 550 P.2d 126, 127 (1976); *Wanke v. Ziebarth Constr. Co.,* 69 Idaho 64, 75, 202 P.2d 384, 391 (1949). Accordingly, the constitutional issue was not raised before the Industrial Commission and, not having been raised, it was not tried and no evidence was put on by the State. As Justice Huntley noted in his dissent to the original opinion:

The Industrial Commission took no evidence on the issue because it has been of the belief that it did not have the power to pass upon constitutional matters. Therefore, had the Department offered testimony in support of a "rational basis," the Commission would properly have excluded the evidence as being irrel-

evant as to any issue before the Commission.

It is unfair for this Court to rule on a constitutional question on appeal, and condemn the State for not making a record of any legislative statement of policy or purpose, or explain and justify a legislative distinction, when no such record could or should have been made.

Second, as to the majority's statement that "we are cited to and find no legislative statement of policy or public purpose nor explanation or justification for such legislative distinction," the majority plainly indicates its belief—erroneously, I believe—that the State had the burden of "citing to" a "legislative statement of policy or public purpose" and explaining and justifying the "legislative distinction." This was the cardinal error of the Court's original opinion and it carries over into the opinion today. The burden of explaining and justifying the rationality of the legislative classification *is not* the burden of the State. There is no requirement that the State offer any evidence or explanation upholding the rationality of this statute. In the United States Supreme Court case of *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), the Court repeatedly stressed that, while there were facts that supported the government's claims that the statute was rationally related to a legitimate government purpose, it was not the responsibility of the government to justify the classification and that the lower courts had erred when they refused to accept a hypothetical rational basis for sustaining the statute at issue. As the majority in *Vance* stated:

> In an equal protection case of this type, however, *those challenging the legislative judgment must convince the court* that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker.

440 U.S. at 111, 99 S.Ct. at 949. The principle articulated in *Vance* has been reaffirmed on numerous occasions by the United States Supreme Court and been followed by this Court as well. *See, e.g., Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) ("States are not required to convince the courts of the correctness of their legislative judgments."); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (governmental classifications presumed valid and party challenging statute must overcome that presumption); *Tarbox v. Tax Comm'n,* 107 Idaho 957, 695 P.2d 342 (1985); *Standlee v. State,* 96 Idaho 849, 538 P.2d 778 (1975) (party challenging the statute must overcome the presumption in favor of constitutionality and clearly show the invalidity of the statute); *Leonardson v. Moon,* 92 Idaho 796, 451 P.2d 542 (1969).

Under these and numerous other cases, it is clear that it was the respondent's burden of demonstrating that there could have been no conceivable facts to justify the classification made by the legislature. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). This the appellant has failed to do, and the majority errs when it relieves appellant of that burden and requires the State to justify and explain the rationality of the classification.

The majority should have upheld this statute even in the absence of evidence or explanation in the record because we are required to uphold a statutory classification if any rational basis can be hypothesized for upholding the statute. As noted by the United States Supreme Court in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Of course one can certainly hypothesize facts and reasons that the legislature could have believed when enacting the present statute. As mentioned in my dissent to the original opinion, the legislature could have had before it testimony or other information that "there was a high degree of unemployment in the agent-driver or commission-driver business involving food or dry cleaning products. That would certainly be a rational basis for the legislature creating the exception from the general rule of non-liability for taxation for services performed

by independent contractors engaged in an independently established trade or business." Consequently, the majority opinion errs when it declares the present statute to be unconstitutional.